**2024-1837**

# United States Court of Appeals for the Federal Circuit

JOSEPH L. CALDERON,

*Claimant-Appellant,*

– v. –

DENIS MCDONOUGH,

*Respondent-Appellee.*

*On Appeal from the United States Court of Appeals for Veterans Claims in No. 23-6177, Honorable Scott J. Laurer, Judge*

## APPELLANT'S PRINCIPAL BRIEF

KATHERINE A. HELM
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
khelm@dechert.com

– and –

SHYAM SHANKER
DECHERT LLP
300 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
(704) 339-3160
shyam.shanker@dechert.com

*Counsel for Appellant Joseph L. Calderon*

AUGUST 26, 2024

CP COUNSEL PRESS    (800) 4-APPEAL • (332357)

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**  2024-1837

**Short Case Caption**  Calderon v. McDonough

**Filing Party/Entity**  Joseph L. Calderon

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/26/2024

Signature:  /s/ Katherine A. Helm

Name:  Katherine A. Helm

**FORM 9. Certificate of Interest**                                          Form 9 (p. 2)
                                                                             March 2023

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Joseph L. Calderon | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Courtney L. Smith | | |
| | | |
| | | |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................... i

TABLE OF AUTHORITIES ............................................................................. iii

STATEMENT OF RELATED CASES .................................................................1

STATEMENT OF JURISDICTION......................................................................2

STATEMENT OF ISSUES .................................................................................4

PRELIMINARY STATEMENT ..........................................................................5

STATEMENT OF THE CASE.............................................................................8

    A.    Mr. Calderon's Service .................................................................8

    B.    The March 27 Board Decision .....................................................8

    C.    Mr. Calderon's Notice of Appeal to the Veterans Court ...............9

    D.    Mr. Calderon's Exceptional Circumstances.................................10

        1.    Mr. Calderon's Care for His Father's Dementia .....................11

        2.    The Decline of Mr. Calderon's Mother ...................................12

        3.    Mr. Calderon's PTSD and Depression ....................................12

        4.    Mr. Calderon and His Wife's Health Issues ............................13

    E.    The Veterans Court's Order Dismissing the Appeal ...................15

    F.    The Veterans Court's Denial of the Motion for Reconsideration.......16

SUMMARY OF ARGUMENT ..........................................................................17

ARGUMENT ....................................................................................................20

    A.    Standard of Review .....................................................................20

B.      The Veterans Court Improperly Adopted a Categorical Rule that Caring for Ailing Parents Cannot Be an Extraordinary Circumstance .......................................................................20

C.      The Veterans Court's Due Diligence Analysis Conflicts with *Checo* ..........................................................................26

D.      The Veterans Court Committed Legal Errors with Respect to Evaluating Mr. Calderon's Mental Illnesses .....................................29

        1.      The Veterans Court Failed to Apply Both Prongs of the Disjunctive Test for Evaluating Equitable Tolling Due to Mental Illness ..........................................................30

        2.      The VA and Veterans Court Failed to Provide or Consider Medical Evidence in Mr. Calderon's File .................36

CONCLUSION ........................................................................43

CERTIFICATE OF COMPLIANCE ..................................................45

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Principi*,
256 F.3d 1318 (Fed. Cir. 2001) .......................................................................39

*Aldrige v. McDonald*,
837 F.3d 1261 (Fed. Cir. 2016) .......................................................................24

*Arbas v. Nicholson*,
403 F.3d 1379 (Fed. Cir. 2005) ..........................................................20, 32, 33

*Balba v. Nicholson*,
No. 06-2176, 2007 WL 641984 (Vet. App. Mar. 2, 2007)...............................34

*Barrett v. Nicholson*,
466 F.3d 1038 (Fed. Cir. 2006) ................................................................*passim*

*Barrett v. Principi*,
363 F.3d 1316 (Fed. Cir. 2004) ................................................................*passim*

*Checo v. Shinseki*,
748 F.3d 1373 (Fed. Cir. 2014) ................................................................*passim*

*Claiborne v. Nicholson*,
19 Vet. App. 181 (2005) ............................................................................33, 34

*Conley v. Peake*,
543 F.3d 1301 (Fed. Cir. 2008) .......................................................................42

*Dixon v. Shinseki*,
741 F.3d 1367 (Fed. Cir. 2014) ..........................................................40, 41, 42

*Elliott v. Shinseki*,
559 F. App'x 1034 (Fed. Cir. 2014) ..........................................................22, 42

*Ferry v. Shinseki*,
No. 12-0798, 2012 WL 2752180 (Vet. App. July 10, 2012)...........................39

*Gechter v. Davidson*,
116 F.3d 1454 (Fed. Cir. 1997) .......................................................................35

*Halpern v. Principi*,
    384 F.3d 1297 (Fed. Cir. 2004) ...................................................42

*Holland v. Fla.*,
    560 U.S. 631 (2010) ....................................................17, 20, 24

*James v. Shulkin*,
    29 Vet. App. 127 (2017) ..............................................................23

*James v. Wilkie*,
    917 F.3d 1368 (Fed. Cir. 2019) ..................................21, 22, 23

*Jensen v. Brown*,
    19 F.3d 1413 (Fed. Cir. 1994) ..................................................43

*Jones v. Nicholson*,
    236 F. App'x 607 (Fed. Cir. 2007) ...........................................43

*K.G. v. Sec. of Health and Human Servs.*,
    951 F.3d 1374 (Fed. Cir. 2020) ................................................33

*Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc.*,
    273 F.3d 30 (1st Cir. 2001) ..........................................31, 32, 33

*Moreno v. Shinseki*,
    No. 09-279, 2012 WL 1402999 (Vet. App. Apr. 24, 2012) ...............34

*Nelson v. Nicholson*,
    489 F.3d 1380 (Fed. Cir. 2007) ................................................30

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005)....................................................................20

*Perciavalle v. McDonough*,
    74 F.4th 1374 (Fed. Cir. 2023) .................................................36

*Skaar v. McDonough*,
    48 F.4th 1323 (Fed. Cir. 2022) ........................................2, 20, 31

*Smith-Haynie v. District of Columbia*,
    155 F.3d 575 (D.C. Cir. 1998)....................................................32

iv

*Sneed v. McDonald*,
   819 F.3d 1347 (Fed. Cir. 2016) ........................................................26, 27, 28

*Sneed v. Shinseki*,
   737 F.3d 719 (Fed. Cir. 2013) .............................................................2, 21, 24

*Toomer v. McDonald*,
   783 F.3d 1229 (Fed. Cir. 2015) .......................................................17, 23, 37, 38

*United States v. Higgins*,
   No. 22-3538, 2023 WL 6536752 (6th Cir. Oct. 6, 2023) ...................................35

*United States v. Johnson*,
   877 F.3d 993 (11th Cir. 2017) ...........................................................................35

*United States v. Smith*,
   849 F. App'x 887 (11th Cir. 2021) ....................................................................35

*Valentin v. McDonald*,
   No. 15-4056, 2016 WL 800257 (Vet. App. Mar. 1, 2016)................................34

**Statutes**

38 U.S.C. § 7266................................................................................................2

38 U.S.C. § 7292(a) .........................................................................................2

38 U.S.C. § 7292(d)(2).....................................................................................36

**Other Authorities**

8 C.F.R. § 208.4(a)(5)(vi) ................................................................................24

8 C.F.R. § 1208.4(a)(vi)(6) ..............................................................................24

Fed. R. App. P. 4...............................................................................................3

## STATEMENT OF RELATED CASES

Counsel for Mr. Calderon is not aware of any other cases pending in this Court or any other court that would directly affect or be directly affected by the Court's decision.

## STATEMENT OF JURISDICTION

This appeal raises legal issues regarding whether the Veterans Court and government complied with binding Federal Circuit precedent, whether the Veterans Court applied the correct legal standard in denying equitable tolling relief, and whether the Veterans Court was too limited in its evaluation of what constitutes extraordinary circumstances.

The Federal Circuit has jurisdiction pursuant to 38 U.S.C. § 7292(a) to review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than determination as to a factual matter) that was relied on by the [Veterans] Court in making the decision." The availability of equitable tolling is a question of law that the Federal Circuit is authorized to address as a contested interpretation of the Veterans Court's jurisdictional statute, 38 U.S.C. § 7266. *See Sneed v. Shinseki*, 737 F.3d 719, 724 (Fed. Cir. 2013) (quoting *Nelson v. Nicholson*, 489 F.3d 1380, 1382 (Fed. Cir. 2007) ("[C]onsideration of equitable tolling presents an issue of statutory interpretation of § 7266(a)"); *see also Barrett v. Principi*, 363 F.3d 1316, 1318 (Fed. Cir. 2004); *Skaar v. McDonough*, 48 F.4th 1323, 1331 (Fed. Cir. 2022).

This Court has exclusive appellate jurisdiction over this appeal from a final judgment of the Veterans Court under 38 U.S.C. § 7292(a). The final judgment of

the Veterans Court was dated March 15, 2024; this appeal was timely filed on May

10, 2024.  FED. R. APP. P. 4; Appx1; Appx111-112.

**STATEMENT OF ISSUES**

1.      Whether the Veterans Court improperly adopted a categorical rule that caring for an ill parent is not an extraordinary circumstance justifying equitable tolling or, alternatively, whether it erred as a matter of law by failing to consider whether the months of in-home care provided to Mr. Calderon's mother was a basis for equitable tolling?

2.      Whether the Veterans Court's due diligence analysis conflicts with *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014) because it determined that Mr. Calderon showed no diligence after the conclusion of an extraordinary circumstance?

3.      Whether the Veterans Court failed to apply the complete legal standard for evaluating equitable tolling due to mental illness as set forth in *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004), including by never addressing whether Mr. Calderon's mental illness prevented him from engaging in deliberate decision making?

4.      Whether the Veterans Court and government failed to comply with *Barrett v. Nicholson*, 466 F.3d 1038, 1043 (Fed. Cir. 2006), including *Barrett*'s holding that the government must provide records relevant to Mr. Calderon's equitable tolling arguments?

## PRELIMINARY STATEMENT

Mr. Calderon respectfully requests that this Court vacate the Veterans Court's dismissal of his appeal. Admittedly, Mr. Calderon's Notice of Appeal was untimely. But that alone does not mandate dismissal. It is well-settled that § 7226(a)'s deadline is subject to equitable tolling. Here, between the date of the Board's decision and the date of the filing of his appeal to the Veterans Court, numerous circumstances prevented the timely filing of his appeal. These include (1) Mr. Calderon's PTSD, depression, and anxiety, and the associated symptoms, including memory loss; (2) the need to provide 24-hour care for his parents, whose health suddenly and rapidly declined after the Board's decision; and (3) multiple infections, including for COVID, by Mr. Calderon and his wife. While the Veterans Court considered the issue of equitable tolling, it committed a series of legal errors in its analysis that warrant remand.

First, the Veterans Court improperly adopted a categorical rule that caring for a sick parent is not an extraordinary circumstance. This holding conflicts with the precedents of this Court and the Supreme Court—all of which hold that the extraordinary circumstance inquiry requires a flexible, case-by-case analysis. While the Veterans Court recited this standard, it did not come close to applying it. It conducted no fact-specific analysis of Mr. Calderon's situation, which involved months of round-the-clock care for *both* of his ailing parents before they passed.

5

Indeed, the Veterans Court never once addressed the at-home care provided to his mother. The *only* analysis provided by the Veterans Court—while discussing Mr. Calderon's care of his ailing father—was that it "[was] unconvinced that . . . caring for his sick parent is an extraordinary circumstance warranting equitable tolling." Appx4. This is nothing more than a categorical holding that caring for a sick parent is not an extraordinary circumstance. This was legal error that warrants remand.

Second, the Veterans Court's decision conflicts with the "stop-clock" approach of *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014). The Veterans Court held that Mr. Calderon failed to show diligence *after* he stopped providing 24-hour home care for his father. But *Checo* says that diligence must be shown *during* the period of extraordinary circumstance; afterwards, the 120-day clock begins to run. The Veterans Court's ruling thus applied the wrong legal standard with respect to diligence. A remand is warranted to ensure the Veterans Court applies the proper legal standard.

Third, the Veterans Court applied an incomplete legal standard in evaluating Mr. Calderon's mental illness. This Court has always characterized the test for equitable tolling for mental illness as a two-part, disjunctive inquiry. The question is whether a veteran's mental illness (1) prevents them from engaging in rational thought or deliberate decision making **or** (2) renders them incapable of handling their own affairs or unable to function in society. *See Barrett v. Principi*, 363 F.3d

6

1316, 1321 (Fed. Cir. 2004) ("*Barrett I*"). The Veterans Court determined that Mr. Calderon had not met his burden to show that he is incapable of handling his own affairs. But the Veterans Court failed to address whether Mr. Calderon's mental illness—including his documented memory loss—prevented him from engaging in deliberate decision making. A remand is necessary to ensure the Veterans Court addresses the complete legal standard.

Finally, the Veterans Court and government failed to comply with *Barrett v. Nicholson*, 466 F.3d 1038, 1043-44 (Fed. Cir. 2006) ("*Barrett II*"). In *Barrett II*, this Court held that, where a veteran alleges facts to show entitlement to equitable tolling, the government "must provide the Veterans Court (and the veteran) . . . all records in its possession relevant to contested jurisdictional issues." *Id.* Mr. Calderon—unrepresented by counsel—informed the Veterans Court and the government that his PTSD and severe depression result in memory loss and an inability to focus or complete routine tasks, including the filing of his Notice of Appeal. The Board's decision, which was before the Veterans Court, references a variety of medical records in his claim file regarding Mr. Calderon's PTSD, depression, and memory loss. Yet the government did not provide those records to the Veterans Court (or Mr. Calderon), and the Veterans Court did not consider such records before dismissing his appeal. Nor did the Veterans Court inform Mr.

7

Calderon that he was entitled to obtain such records. This alone warrants vacatur and remand.

## STATEMENT OF THE CASE

### A.    Mr. Calderon's Service

Mr. Calderon served from May 1981 to May 1984 with the Reserve service. Appx15; Appx31. Additionally, Mr. Calderon deployed with the U.S. Army Reserves to Panama in 1990. Appx15; Appx37. While deployed to Panama, Mr. Calderon worked as an advisor to Panamanian police forces and was assigned to covert operations collecting intelligence on corruption and drug trafficking. Appx18. In October 1990, Mr. Calderon was stopped at a checkpoint by armed members of the Panamanian Civil Forces, who detained and assaulted him, causing him to lose consciousness. *Id.* He further believed at the time that he was going to lose his life. *Id.* Mr. Calderon's mental health conditions stem from this trauma. Appx32 (PTSD is "related to his military service" and "trauma during his service.").

### B.    The March 27 Board Decision

Mr. Calderon sought service connection for his mental illness due to these events. On March 27, 2023, the Board of Veterans' Appeals ("Board") denied Mr. Calderon's request for service connection for an acquired psychiatric disorder, including posttraumatic stress disorder ("PTSD"), depression, and anxiety. Appx14-23. While the Board determined there was no "corroborated in-service stressor event" for Mr. Calderon's PTSD, depression, and anxiety (Appx21-23), the Board

8

conceded that he was diagnosed by VA with each condition in 2015. *See* Appx18 ("The evidence shows a current diagnosis of PTSD, diagnosed by VA in December 2015"); *see also* Appx21 ("The evidence shows a current diagnosis of MDD and anxiety disorder, diagnosed by VA in December 2015.").

Relevant to the equitable tolling issues on this appeal, the Board decision cited numerous medical opinions concerning Mr. Calderon's PTSD, depression, and anxiety:

- "December 2020 private medical opinions" and "June 2014 VA examination report." Appx18.

- "March 2014 VA treatment record" and "June 2017 VA treatment record." Appx19.

- "May 2020 medical opinion," "June 2014 VA examination," and "December 2020 medical opinion." Appx21.

- "June 2014 PTSD DBQ," indicating a "long history of depression since 1986," and "December 2020 medical opinions." Appx22.

*None* of these cited records was provided to Mr. Calderon by the government or reviewed by the Veterans Court.

### C.    Mr. Calderon's Notice of Appeal to the Veterans Court

On October 2, 2023, Mr. Calderon filed a Notice of Appeal of the Board's decision with the Court of Appeals for Veterans Claims (the "Veterans Court"),

seeking to challenge the Board's service connection determination. *See* Appx11. The Veterans Court then issued a Notice of Docketing, requiring the Board's decision to be docketed within 30 days and the Record before the Agency ("RBA") to be docketed within 60 days. Appx110. The Secretary filed a copy of the Board decision (Appx13-23) with the Veterans Court, but did not file a copy of the RBA. Instead, the Secretary filed motions to dismiss the case for lack of jurisdiction due to an untimely Notice of Appeal and to stay proceedings pending a ruling on the motion to dismiss. Appx104; Appx106-109.

After the Clerk granted the Secretary's motion to stay (Appx9), the Veterans Court issued an order requiring Mr. Calderon to provide an explanation within 20 days for why the Veterans Court should not dismiss the appeal. Appx11-12. In that order, the Veterans Court informed Mr. Calderon—who was unrepresented by counsel at the time—that it was his burden to produce evidence necessary to support tolling. Appx12. But the Court *did not* inform Mr. Calderon that he was entitled to request or obtain records in the VA's possession relevant to the jurisdictional dispute, such as his VA claim file. *Id.*

### D.    Mr. Calderon's Exceptional Circumstances

Pursuant to the Veterans Court's order, Mr. Calderon provided his response to the motion to dismiss. That response indicated that, due to Mr. Calderon's "inability to concentrate," a symptom of PTSD and depression, his wife typed his

response to "ensure the information [was] correct." Appx29. Mr. Calderon's response details the circumstances after the March 27, 2023 Board Decision which impacted his ability to timely file a notice of appeal. Appx29-30. These include the symptoms of his mental illness, including memory loss, and the consistent in-home care he provided to his extremely ill parents. Appx29-30. Mr. Calderon also stated that he "[i]mmediately" made a "diligent effort to respond" to file his Notice of Appeal. Appx30.

### 1.     Mr. Calderon's Care for His Father's Dementia

From March 22, 2023 through May 30, 2023, Mr. Calderon traveled to and from Mexico with his father and then provided in-home care for his father. *See* Appx29 ("Went to Mexico to care for Falter [sic]" from "March 22, 2023 – April 4, 2023"). His father was diagnosed with vascular dementia, requiring in home care from Mr. Calderon, during which his father exhibited aggressive behavior. *Id.* ("had to care for my father in my home"); Appx61. Mr. Calderon provided the Veterans Court documentation reflecting his flights to and from Mexico with his father. *See* Appx38-43. He also provided correspondence from a medical professional confirming his father's diagnosis stating his father's need for "24-hour care for medication assistance, safety, and supervision." Appx61. In addition, that letter stated that Mr. Calderon's father is "incapable of managing his financial affairs nor

11

will he be able to do so in the future." *Id.* Mr. Calderon's father unfortunately passed away suddenly on August 30. Appx30; Appx82.

### 2. The Decline of Mr. Calderon's Mother

From June 2023 through December 2023, Mr. Calderon's mother's health deteriorated significantly due to Alzheimer's. Appx101-102 (December 2023 letter stating that "Ms. Calderon's health has deteriorated over the past six months"); Appx103 (noting 2018 "Alzheimer's disease" diagnosis and that she "lacks the ability to understand and process information"); Appx30. A family nurse practitioner stated that his mother "required support at home," that Mr. Calderon was her "current caregiver," and she depends on him for "assistance within the confines of their residence." Appx101. His mother's "lack of capacity [was] progressive and permanent." Appx103; Appx53. In other words, Mr. Calderon actively provided at-home care for his mother, including during the six-month period from June 2023 to December 2023, where her health deteriorated significantly. Appx101. Sadly, she too passed away on December 1, 2023. Appx30.

### 3. Mr. Calderon's PTSD and Depression

Even before the health decline of his parents, Mr. Calderon was diagnosed with PTSD and depression. Appx19; Appx21. The above-described events "intensified the symptoms" he experiences as a result of his PTSD and depression, including memory loss. Appx29; Appx32. He explained that his PTSD and

12

depression result in an "inability to concentrate," "increased forgetfulness," and that he can "never complete all the things [he] needs to do." Appx29. He further described that the nature of his mental condition causes him to ignore important tasks and that his medication further contributes to his forgetfulness. Appx29. Indeed, he is unable to keep track of his schedule on his own so his wife "helps to keep [him] on track with [his] schedule and task[s] to be completed when [he] forget[s]." *Id.* His depression and PTSD result in a cycle where he gets "distracted" by "small inconsequential tasks," but "ignore[s] the items that are more important," such as a Notice of Appeal. Appx29.

Importantly, Mr. Calderon also submitted corroborating evidence from medical experts *from the VA itself* regarding his PTSD and depression. Dr. Victor, a staff psychiatrist at the VA, wrote that Mr. Calderon was being treated for PTSD and major depressive disorder, and that he has "difficulty concentrating" and exhibits "forgetfulness." Appx32. Records from his primary care physician back in 2011 indicate that he was assessed with "Memory Lapses or Loss" and that Mr. Calderon was concerned about his forgetfulness. Appx34.

### 4. Mr. Calderon and His Wife's Health Issues

On top of all of the above issues, Mr. Calderon and his wife also had various medical issues during this time period. From May 1 to May 3, Mr. Calderon's wife was in the hospital for surgery. Appx29; Appx44. Later that month, she had a post

13

operative infection requiring treatment.  Appx29; Appx45.  In August, his wife contracted COVID, and both he and his wife contracting COVID again in September.  Appx29; Appx3.  She further had another infection in August and an allergic reaction to her medication.  *Id.*

\*     \*     \*

Thus, during the intervening time period between the mailing of the Board's decision and the filing of the Notice of Appeal, numerous events impacted Mr. Calderon's ability to file his appeal to the Veterans Court.  From the March 27 Board decision through May, the following events took place:



14

After Mr. Calderon ceased providing at-home care for his father, the following additional events took place:



### E. The Veterans Court's Order Dismissing the Appeal

Despite Mr. Calderon's submission, the Veterans Court dismissed his appeal because he filed his Notice of Appeal 69 days after the 120-day deadline. Appx2-5. In so doing, the Veterans Court determined that equitable tolling was not warranted.

With respect to Mr. Calderon's PTSD and depression, the Veterans Court stated that Mr. Calderon had the burden of proving that this "caused him to be 'incapable of handling [his] own affairs or unable to function [in] society,'" citing *Craig-Davidson v. McDonough*, 35 Vet. App. 281, 287 (2022). Appx4. The Veterans Court further determined that Mr. Calderon had not met his burden of

showing he "couldn't handle his own affairs"—without reviewing any of the additional medical records in his claim file. *Id.*

The Veterans Court also held that Mr. Calderon did not establish "an extraordinary circumstance beyond being out of the country for 9 days." Appx4. While the Veterans Court acknowledged the "in-home care" provided to his father, the Veterans Court simply stated that it was "unconvinced that [Mr. Calderon's] caring for his sick parent is an extraordinary circumstance warranting equitable tolling." *Id.* And the Veterans Court never addressed Mr. Calderon's care for his mother from June to December, whose health was also failing. *Id.*; Appx101. Finally, the Veterans Court stated that Mr. Calderon did not account for the time period "between May 30 and August 15, 2023," even though Mr. Calderon provided evidence showing that he was providing in-home care to his mother at this time, whose Alzheimer's rapidly deteriorated. Appx4; Appx101-102.

**F.    The Veterans Court's Denial of the Motion for Reconsideration**

After the Veterans Court dismissed Mr. Calderon's appeal, Mr. Calderon obtained counsel who filed a motion for reconsideration. Appx26-28. The motion argued in-part that the Veterans Court did not address the full legal standard for equitable tolling due to mental illness. Appx26-27. The motion stated that the Veterans Court order did "not address whether equitable tolling could be warranted when Appellant's mental health prevented him from rational thought or deliberate

decision making." Appx27.  The motion also highlighted the Veterans Court's failure to address the "in home care for his ill mother." Appx27-28.

The Veterans Court denied the motion with a stamp order containing no rationale for the Veterans Court's denial. Appx6.

## SUMMARY OF ARGUMENT

1.   The Veterans Court erred as a matter of law by adopting a rule that "caring for his sick parent" cannot be an extraordinary circumstance warranting equitable tolling.  Appx4.  This Court has repeatedly emphasized that "equitable tolling is not 'limited to a small and closed set of factual patterns.'"  *Toomer v. McDonald*, 783 F.3d 1229, 1239 (Fed. Cir. 2015) (quoting *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005)).  So too has the Supreme Court, which rejected the adoption of "overly rigid *per se* approache[s]" to determine what constitutes an extraordinary circumstance.  *Holland v. Fla.*, 560 U.S. 631, 653 (2010).  The Veterans Court adopted a categorical rule, ruling that caring for an ill parent is not an extraordinary circumstance.  Because of this rule, the Veterans Court dismissed Mr. Calderon's 24-hour need to care for his father without any analysis.  Appx4; Appx61.  And the Veterans Court did not even address the many months of in-home care for his mother.  Appx4; Appx101.  Either the Veterans Court erred by adopting a categorical rule, or it erred as a matter of law by failing to address whether the in-home care provided to Mr. Calderon's mother could be a basis for equitable tolling.

17

Mr. Calderon provided 64 days of 24-hour care for his father—due to his deteriorating dementia—and months of similar at-home care for his mother until she passed. Appx29; Appx61; Appx101. Remand is appropriate for the Veterans Court to apply the proper case-by-case approach to determine whether Mr. Calderon's care for his ailing parents qualifies as an extraordinary circumstance.

2. The Veterans Court also applied the incorrect legal standard for due diligence. This Court's decision in *Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014) adopted a "stop-clock" approach to tolling. It held that the time period where diligence must be shown is during the extraordinary circumstance, not afterwards. The Veterans Court below determined that, even if it credited the care of Mr. Calderon's father as an extraordinary circumstance, Mr. Calderon failed to act diligently afterwards. In so doing, the Veterans Court's opinion requires Mr. Calderon to show diligence after the extraordinary circumstance ends, not during the extraordinary circumstance. That is not the law.

3. The Veterans Court further failed to apply the complete legal standard for equitable tolling regarding Mr. Calderon's mental illness. In *Barrett v. Principi*, 363 F.3d 1316 (Fed. Cir. 2004) ("*Barrett I*"), this Court held the equitable tolling analysis for mental illness is whether it prevented him from engaging in "rational thought or deliberate decision making" **or** rendered him "incapable of handling his own affairs or unable to function in society." (emphasis added and internal cites

18

omitted).  There are at least two different ways a veteran can meet this standard.  The veteran can show that their mental condition either (1) renders them incapable of handling their own affairs or function in society; or (2) prevents them from engaging in rational thought or deliberate decision making.  The Veterans Court below only addressed the former, stating that Mr. Calderon's response didn't "rise to the level of showing that he couldn't handle his own affairs." Appx4.  But the Veterans Court never addressed whether Mr. Calderon's illnesses prevent him engaging in deliberate decision making.

4.     Finally, the Veterans Court and the government violated *Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006) ("*Barrett II*").  *Barrett II* recognized the inequity of permitting the government to withhold relevant information in its possession during a jurisdictional dispute.  Thus, *Barrett* held that "the government *must* provide the Veterans Court (and the veteran) . . . all records in its possession relevant to contested jurisdictional issues."  *Id.* at 1043-44 (emphasis added). *Barrett* further imposed a "duty on the government to develop relevant facts in order to clarify the jurisdictional record," particularly due to the government's "access to medical staff that is supremely qualified to make determinations of mental incapacity." *Id.* at 1044.  Mr. Calderon argued to the Veterans Court that equitable tolling was appropriate due to his PTSD, depression, and associated memory loss. Appx29-30.  Even though the Board decision, which was in the record, cited a

19

variety of medical records relating to these conditions and referenced Mr. Calderon's memory loss, none of them was provided to Mr. Calderon or the Veterans Court. The government's failure to comply with *Barrett II* and Veterans Court's premature ruling—without obtaining such records—warrant remand.

## ARGUMENT

### A.    Standard of Review

This Court reviews Veterans Court legal determinations de novo.  *See Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005).  "[W]hether the Veterans Court applied the correct legal standard for equitable tolling is a question of law [this Court] review[s] de novo."  *Skaar v. McDonough*, 48 F.4th 1323, 1331 (Fed. Cir. 2022).

"[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

### B.    The Veterans Court Improperly Adopted a Categorical Rule that Caring for Ailing Parents Cannot Be an Extraordinary Circumstance

In *Holland v. Florida*, the Supreme Court rejected the adoption of "overly rigid *per se* approache[s]" to determine what constitutes an extraordinary circumstance.  *Holland v. Fla.*, 560 U.S. 631, 653 (2010).  Instead, the Supreme Court emphasized the need to evaluate equitable tolling claims in a flexible manner,

20

evaluating the specific circumstances of each case. *Id.* at 650 ("specific circumstances . . . could warrant special treatment in an appropriate case."). This Court too has stated that "[e]quitable tolling is not limited to a small and closed set of factual patterns," and that it is to be applied on a "case-by-case basis." *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) (internal cites omitted). While the Veterans Court below acknowledged that equitable tolling is a fact-specific inquiry dependent on circumstances, *see* Appx3, it failed to adhere to this approach in practice. *See James v. Wilkie*, 917 F.3d 1368, 1373-74 (Fed. Cir. 2019) ("[w]hen determining whether a court committed legal error in selecting the appropriate legal standard, we determine which legal standard the tribunal *applied,* not which standard it recited.").

Here, the Veterans Court legally erred by adopting a rigid, mechanical rule that caring for an ill parent is not an extraordinary circumstance. The Veterans Court, in addressing Mr. Calderon's care "for his father," stated that it was "unconvinced that appellant's caring for his sick parent is an extraordinary circumstance." Appx4. The Veterans Court did not conduct any fact-specific inquiry explaining why Mr. Calderon's care for his father did not qualify as an extraordinary circumstance. *Id.* Instead, the Court was simply "unconvinced" that the caring for any parent could constitute an extraordinary circumstance. *Id.*

21

The Veterans Court's statement—that it was unconvinced that "caring for his sick parent" is an extraordinary circumstance—is best understood as a rigid rule, not a case-by-case analysis. Appx4. The Veterans Court made this statement after it noted Mr. Calderon's need to care for his ailing father. *Id.* ("caring for his father between April 4 and May 30"). But its opinion says nothing further other than this statement. *Id.* The Veterans Court provided no factual analysis explaining why Mr. Calderon's 24-hour care for his ill father is not extraordinary. Nor did it address Mr. Calderon's in-home care for his mother from June to December 2023, presumably because it already held that caring for an ill parent is not an extraordinary circumstance.[1] Appx3; *see also* Appx101 (December 2023 letter describing "required" in-home care for past 6 months, i.e., from June to December 2023). If the Veterans Court applied the proper standard, it would have also assessed whether caring for his mother due to her deteriorating Alzheimer's was an extraordinary circumstance. It did no such thing. Instead, the Veterans Court stated that it was "unconvinced" that caring for a sick parent could be an extraordinary circumstance.

---

[1] Even if the Veterans Court did not adopt a categorical rule, it then erred as a matter of law by failing to even consider or address whether the months of in-home care to Mr. Calderon's mother can be a basis for equitable tolling. *See Elliott v. Shinseki*, 559 F. App'x 1034, 1036-37 (Fed. Cir. 2014) (agreeing that "Veterans Court erred as a matter of law by failing to consider whether evidence of nonreceipt coupled with diligence may be a basis for equitable tolling"). In other words, either the Veterans Court erred by adopting a categorical rule or it erred by failing to address one of Mr. Calderon's equitable tolling arguments.

22

Appx4.  This categorical rule was legally improper.  *See James*, 917 F.3d at 1374 ("although the Veterans Court framed its standard of review and conclusions in terms of a case-by-case analysis . . . it actually *applied* a categorical ban . . . .").

This Court has repeatedly emphasized that "equitable tolling is not 'limited to a small and closed set of factual patterns.'"  *Toomer v. McDonald*, 783 F.3d 1229, 1239 (Fed. Cir. 2015) (quoting *Mapu v. Nicholson*, 397 F.3d 1375, 1380 (Fed. Cir. 2005)).  For example, in *James v. Wilkie*, 917 F.3d 1368, 1373 (Fed. Cir. 2019), the Court held that the "the extraordinary circumstance element necessarily requires *a case-by-case* analysis and not a categorical determination." (emphasis added).  In *James*, this Court determined that the Veterans Court erred by applying a "categorical ban foreclosing the possibility that a fallen mailbox flag may ever constitute an extraordinary circumstance."  *Id.* at 1374.[2]  The Veterans Court's statement in *James* that a "fallen mailbox flag is not an extraordinary circumstance beyond the appellant's control" was determined by this Court to be a categorical rule.  *Id.*  Similarly, the Veterans Court's statement here that it was "unconvinced" that "caring for his sick parent is an extraordinary circumstance warranting equitable tolling" should also be read a categorical rule.  Appx4.  The Veterans Court

---

[2] Indeed, even though the Veterans Court in *James* also stated that "equitable tolling . . . must be assessed on a case-by-case basis," this Court held that the Veterans Court applied a categorical rule in practice.  *See James v. Shulkin*, 29 Vet. App. 127, 129 (2017).

conducted no further analysis.  It also never addressed Mr. Calderon's care for his mother—which is an independent legal error (*supra* at 22 n.1)—*because* this was an improper categorical rule.

Similarly, in *Sneed*, this Court vacated a Veterans Court decision that categorically determined that attorney abandonment was not a basis for equitable tolling.  *Sneed*, 737 F.3d at 721-23.  *Sneed* found that the Veterans Court improperly looked at whether attorney misconduct fit within prior fact patterns.  This Court held that the "equitable principles invoked in *Holland*" apply "just as strongly in veterans cases as they do in the habeas corpus context."  *Id.* at 728.

And in *Aldrige v. McDonald*, 837 F.3d 1261, 1263 (Fed. Cir. 2016), this Court affirmed the Veterans Court's determination that an appellant failed to show that "deaths in his family" affected the timely filing of his appeal.  While this Court determined that the Veterans Court applied the correct legal standard with respect to diligence, this Court appeared to implicitly recognize that deaths in a family could qualify as an "extraordinary circumstance."  *Id.*[3]

---

[3] While not in an equitable tolling context, 8 C.F.R. § 208.4(a)(5)(vi) defines "extraordinary circumstances" as including situations where there is a "serious illness or incapacity of . . . a member of the applicant's immediate family." *See also* 8 C.F.R. § 1208.4(a)(vi)(6).  Given the flexible nature of an equitable tolling analysis, it was improper for the Veterans Court to categorically determine that caring for an extremely ill family member *per se* was not an extraordinary circumstance.

The touchstone for determining what constitutes an "extraordinary circumstance" is whether there was some event or condition—beyond the control of the party seeking to toll the statute of limitations—that prevented timely action despite diligent efforts. That approach is broad and flexible and necessarily depends on the unique circumstances of a given case, not categorical rules that certain conditions can never qualify as extraordinary circumstances. Here, the Veterans Court's simply determined that "caring for his sick parent" cannot be an extraordinary circumstance, without any additional explanation. Appx4. As a result, the Veterans Court neglected to consider the totality of Mr. Calderon's situation as a veteran with PTSD/depression who provided 24-hour home care to both of his ill parents, whose conditions were rapidly deteriorating, for an extended period of time.

The adoption of this mechanical rule meaningfully impacted the outcome of the equitable tolling analysis. The Veterans Court determined that Mr. Calderon filed his Notice of Appeal 69 days late. Appx4. But Mr. Calderon traveled and gave his father at-home care from the Board's decision through May 30. Appx29 ("had to care for my father in my home" to May 30); Appx3. A medical professional submitted evidence to the Veterans Court indicating that this required "24-hour care for medication assistance, safety, and supervision." Appx61. That alone would toll 64 days of time, accounting for the vast majority of the 69-day delay.

25

In addition, after Mr. Calderon stopped caring for his father at the end of May, he provided in-home care to his mother—whose Alzheimer's condition deteriorated aggressively—until she passed in December 2023. Appx101 (December 2023 letter describing "required" in-home care for past 6 months, i.e., from June to December 2023). The Veterans Court presumably never discussed the care for his mother because it already held that "caring for his sick parent" could not constitute an extraordinary circumstance. Appx4. Had the Veterans Court applied the proper, case-by-case approach, it may have concluded that the statute of limitations should be tolled for the periods in which Mr. Calderon provided in-home care for his father and mother before they passed. That approach may account for all of Mr. Calderon's 69-day delay, making the October Notice of Appeal timely.

## C. The Veterans Court's Due Diligence Analysis Conflicts with *Checo*

This Court has applied a "stop-clock" approach to equitable tolling. *See Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014). Under this approach, the 120-day clock for filing the Notice of Appeal temporarily stops during an extraordinary circumstance and only begins to run after the extraordinary circumstance ends. *Id.* 1380, n. 9 ("Ms. Checo would have had 120 days after October 6, 2011 to file her NOA"). In *Checo*, this Court held that a party need only demonstrate "due diligence" *during* the period an extraordinary circumstance is in effect to equitably toll a limitations period. *Checo*, 748 F.3d at 1380 ("we conclude

that Ms. Checo must only demonstrate due diligence during the extraordinary circumstance period, which began on July 7, 2011 and ended on October 6, 2011."). It does not require a showing of diligence while the clock runs. *See Sneed v. McDonald*, 819 F.3d 1347, 1353 (Fed. Cir. 2016) (requiring "reasonable diligence . . . during the alleged extraordinary circumstance period.").

The Veterans Court's due diligence analysis runs afoul of this standard. The Veterans Court required Mr. Calderon to show diligence *after* an extraordinary circumstance ended, not during the period. The Veterans Court stated that "[e]ven if [it] were to accept that [Mr. Calderon] satisfies the extraordinary circumstance by caring for his father between April 4 and May 30, he fails to explain why he wasn't able to file his NOA between May 30 and August 15, 2023," when Mr. Calderon's wife became ill. Appx4.[4] In other words, the Veterans Court recognized that Mr. Calderon cared for his father until May 30, and that his wife became sick on August 15. *Id.* But the Veterans Court concluded that in the intervening time between those two circumstances—May 30 to August 15—Mr. Calderon had not demonstrated diligence. *Id.* The opinion therefore states that Mr. Calderon "doesn't account for the time period *after* he stopped providing in-home care for his father." *Id.* (emphasis added).

---

[4] This once again ignores Mr. Calderon's need to provide significant in-home care to his mother beginning in June 2023. Appx101.

27

This was legal error under *Checo*. A stop-clock approach requires diligence during the period(s) of the extraordinary circumstance(s).[5] Mr. Calderon need not show diligence outside of those periods. Thus, if Veterans Court determined that there was no extraordinary circumstance between May 30 and August 15, it was improper to use a lack of diligence within this period to dismiss his appeal. In fact, the Veterans Court acknowledged that after August 15, 2023, Mr. Calderon's wife suddenly became ill, requiring Mr. Calderon's attention, and that there were multiple COVID diagnoses in August and September. Appx4.

If the Veterans Court had properly found that there was an extraordinary circumstance through May 30, *see supra* 20-26, the 120-day clock would have begun running on May 31. The 120-day clock would have then expired after September 27, 2023—*just 5 days* before Mr. Calderon filed his Notice of Appeal. Thus, Mr. Calderon would only need to toll an additional 5 days to make his Notice of Appeal timely. Had the Veterans Court properly addressed whether the (1) multiple COVID diagnoses in August and September, or (2) the time Mr. Calderon provided in-home care for his mother were extraordinary circumstances, the clock may "stop" again and account for those remaining 5 days. *See Sneed*, 819 F.3d at 1353 ("Under

---

[5] In this regard, the Veterans Court made no factual findings on Mr. Calderon's diligence during this time period. This Court cannot do so on appeal due to its limited jurisdiction.

28

*Checco*'s 'stop-clock approach,' if diligence is shown, the 120–day filing period would be tolled during the extraordinary circumstance period and resume running when the extraordinary circumstance ended.").

Because the Veterans Court applied the incorrect legal standard regarding due diligence, it failed to make these factual findings in the first instance. It was legal error for the Veterans Court to rely on a lack of diligence during a period where it found no extraordinary circumstance. Remand is warranted to ensure the Veterans Court applies the proper diligence standard.

### D.    The Veterans Court Committed Legal Errors with Respect to Evaluating Mr. Calderon's Mental Illnesses

The Veterans Court also independently committed two legal errors with respect to evaluating equitable tolling due to Mr. Calderon's mental illness.

First, the Veterans Court's decision failed to wholly apply *Barrett v. Principi*, 363 F.3d 1316, 1319 (Fed. Cir. 2004) ("*Barrett I*"). There, this Court held that "mental illness can justify equitable tolling," joining many circuits that allow mental illness to justify equitable tolling. *Id.* at 1318. *Barrett I* stated that tolling is appropriate where a mental infirmity prevents a veteran from engaging in "rational thought or deliberate decision making" **_or_** renders him "incapable of handling his own affairs or unable to function in society." *Id.* at 1321 (internal cites omitted and emphasis added). This is a disjunctive test—a veteran can demonstrate tolling by either showing that a mental illness has prevented them from engaging in deliberate

29

decision making *or* from handling their own affairs. The Veterans Court entirely ignored whether Mr. Calderon's mental illness prevented him from engaging in deliberate decision making. This was erroneous.

Second, the government and Veterans Court failed to comply with this Court's decision in *Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006) ("*Barrett II*"). There, this Court held "the government *must* provide the Veterans Court (and the veteran) . . . all records in its possession relevant to contested jurisdictional issues" once the veteran has sufficiently alleged that his mental illness impeded the filing of his Notice of Appeal. *Id.* at 1043-44 (emphasis added). Here, Mr. Calderon alleged that his memory loss from his PTSD and depression impacted the filing of his appeal. Yet the government failed to provide medical records in his claims file to him or the Veterans Court. And the Veterans Court dismissed Mr. Calderon's appeal while also using the lack of sufficient medical evidence against him. This was also legal error warranting remand.

### 1.    The Veterans Court Failed to Apply Both Prongs of the Disjunctive Test for Evaluating Equitable Tolling Due to Mental Illness

"[C]onsideration of equitable tolling" presents an issue of statutory interpretation of § 7266(a). *Nelson v. Nicholson*, 489 F.3d 1380, 1382 (Fed. Cir. 2007). "[W]hether the Veterans Court applied the correct legal standard for

30

equitable tolling is a question of law [this Court] review[s] de novo." *Skaar v. McDonough*, 48 F.4th 1323, 1331 (Fed. Cir. 2022).

The Veteran Court's Order dismissing Mr. Calderon's appeal failed to apply *the complete* legal standard for equitable tolling due to mental illness. The Veterans Court stated that Mr. Calderon had the burden of proving that his PTSD rendered him "incapable of handling [his] own affairs or unable to function [in] society," citing *Craig-Davidson v. McDonough*. Appx4. The Veterans Court then found that Mr. Calderon did not meet that standard. *Id.* But the Veterans Court addressed only part of the test set forth in *Barrett I*.

In *Barrett I*, this Court stated that the relevant test is whether the mental infirmity rendered a veteran incapable of "rational thought or deliberate decision making **or** incapable of handling his own affairs or unable to function in society." 363 F.3d at 1321 (internal cites omitted). This test is disjunctive. Mental illness can toll the statute of limitations where it either (1) renders someone incapable of handling their own affairs or functioning in society; or (2) renders them incapable of engaging in rational thought or deliberate decision making. Indeed, when this Court adopted its test for tolling for mental illness, it borrowed both prongs of the test from two different Circuits. *Barrett I*, 363 F.3d at 1321. The First Circuit, on the one hand, utilizes a test that requires a showing that an individual is unable "to engage in rational thought and deliberate decision making." *Melendez-Arroyo v. Cutler-*

31

*Hammer de P.R. Co., Inc.*, 273 F.3d 30, 37 (1st Cir. 2001). The D.C. Circuit, on the other hand, characterized the test as whether they can show that they are "incapable of handling [their] own affairs or unable to function [in] society." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998). If the two tests were co-extensive and duplicative, there would have been no need for *Barrett* to adopt both.[6]

Indeed, *Melendez-Arroyo v. Cutler-Hammer de P.R. Co., Inc.* illustrates that the two parts of the test are not duplicative. There, the complainant filed an age discrimination charge 83 days after the 300-day deadline. 273 F.3d at 32. During this period, she experienced "depressive symptoms," which "became substantially worse," she "return[ed] to work" and required "further treatment." *Id.* Applying the "unable to engage in deliberate decision making" test, the First Circuit found that the complainant raised sufficient factual disputes to defeat summary judgment. *Id.* at 38. The record showed that she had to "live with her sister" and required assistance with getting "dressed" and "brushing her teeth." *Id.* The First Circuit found factual disputes even though the complainant was able to return to work, and interview notes showed that the complainant was able to behave in a "logical,

---

[6] In *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998), the D.C. Circuit noted that "[i]mpaired judgment is not enough to toll the statute of limitations" to meet the "incapable of handling her own affairs or unable to function [in] society" standard. Yet, impaired judgment *can* be sufficient to show an inability to engage in deliberate decision making. *See Arbas*, 403 F.3d at 1381 ("myriad of physical illnesses or conditions that impair cognitive function").

32

coherent, relevant manner." *Id.* Thus, under the First Circuit's formulation, adopted by *Barrett I*, there are scenarios where an individual may be unable to engage in deliberate decision making but *can* function in society.[7]

Since *Barrett I*, this Court has characterized the test as disjunctive. *See K.G. v. Sec. of Health and Human Servs.*, 951 F.3d 1374, 1381 (Fed. Cir. 2020) (stating that claimant must show failure to file was result of "mental illness or disability that rendered her incapable of rational thought, incapable of deliberate decision making, incapable of handling her own affairs, or unable to function in society"); *Arbas*, 403 F.3d at 1381 (stating same test).

Moreover, even the Veterans Court itself has properly addressed the full legal standard. In *Claiborne v. Nicholson*, 19 Vet. App. 181, 183 (2005), the Veterans Court directed the appellant to file a response showing that their mental illness rendered him "(a) incapable of 'rational thought or deliberate decision making' or (b) 'incapable of handling [his] own affairs' or (c) 'unable to function [in] society.'"

---

[7] For example, an individual with bipolar disorder may have depressive episodes significantly impeding their judgment or decision making, but they may still be able to function in society. Similarly, major depressive disorder may impact an individual's cognitive function even though they otherwise are able to do the bare minimum and function in their job. Ultimately, these are fact-specific determinations that are best aided with medical expertise. This only further highlights the importance of the submission of *all* medical records to the Veterans Court—an independent error explained further below. *See infra* at 36-43.

*Id.* Implicit in this order is that there are multiple ways for a mental illness to toll the statute of limitations.

Other Veterans Court decisions have similarly recognized the disjunctive nature of the inquiry. *See Balba v. Nicholson*, No. 06-2176, 2007 WL 641984, at *1 (Vet. App. Mar. 2, 2007) (noting order to show illness prevented "him (a) from engaging in rational thought or deliberate decision making or (b) rendered him incapable of handling his own affairs or functioning in society"); *Moreno v. Shinseki*, No. 09-279, 2012 WL 1402999, at *2 (Vet. App. Apr. 24, 2012) (analyzing whether blindness "prevented him from engaging in rational though [sic] or deliberate decision making or that it rendered him incapable of handling his own affairs or unable to function in society"); *Valentin v. McDonald*, No. 15-4056, 2016 WL 800257, at *2 (Vet. App. Mar. 1, 2016) (framing issue as whether evidence showed that "mental disabilities rendered her incapable of rational thought or deliberate decision making, incapable of handling her own affairs, or unable to function in society for the period of time she is seeking to toll.").

Here, the Veterans Court failed to address whether Mr. Calderon's PTSD and depression—aggravated by numerous events—prevented him from engaging in deliberate decision making. The Veterans Court determined that Mr. Calderon's response didn't "rise to the level of showing that he couldn't handle his own affairs," but failed to address the complete test. Appx4.

34

Recognizing this error, Mr. Calderon filed a timely motion for reconsideration informing the Veterans Court that it failed to address the complete legal standard. Appx26-27. The Veterans Court denied Mr. Calderon's motion via a stamp order with no rationale. Appx6. In this context, where the Veterans Court failed to address the full legal standard in the first instance, a stamp order—with no rationale—cannot supplement the Veteran Court's decision. *See Gechter v. Davidson*, 116 F.3d 1454, 1457 (Fed. Cir. 1997) ("Necessary findings must be expressed with sufficient particularity" to enable the Court "without resort to speculation" to understand the reasoning of the lower tribunal); *United States v. Higgins*, No. 22-3538, 2023 WL 6536752, at *14 (6th Cir. Oct. 6, 2023) ("At the very least, the district court did not explain its findings with sufficient clarity for us to adequately perform appellate review."); *United States v. Smith*, 849 F. App'x 887, 890 (11th Cir. 2021) ("The district court's reasoning for its decision is not clear from either its order or the record, which precludes meaningful appellate review . . . ."); *United States v. Johnson*, 877 F.3d 993, 998-1000 (11th Cir. 2017) (finding summary order denying motion to be abuse of discretion with no basis for denial).

Without any explanation, it is unclear what the basis of the Veterans Court's stamp order denial was. One possibility is that the Veterans Court did not believe there was a distinction between proving that one is incapable of handling their own affairs or that they cannot engage in deliberate decision making. That would be legal

error.  Another is that the Veterans Court determined that, even if it applied the correct standard, that equitable tolling is inappropriate.  On this record, this Court cannot say with certainty which was the Veterans Court's rationale.  Indeed, this Court lacks jurisdiction to make any fact-based harmless error determination on this appeal.  *See* 38 U.S.C. § 7292(d)(2); *see also Perciavalle v. McDonough*, 74 F.4th 1374, 1381-82 (Fed. Cir. 2023) ("But we have no authority to review, much less determine, the facts in veterans' cases . . . and we have specifically held that we lack authority to make a fact-based determination of harmless error").[8]

### 2. The VA and Veterans Court Failed to Provide or Consider Medical Evidence in Mr. Calderon's File

In *Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006) ("*Barrett II*"), this Court noted that "full breadth of the information possessed by the DVA and the content of a veteran's claim file is generally not known to a veteran, if ever, until after the record on appeal has been designated and transmitted under the court's Rules 10 and 11."  *Id.* at 1043.  In the context of a jurisdictional dispute, however, "designation and transmission of the record does not occur until after the Veterans Court has made its jurisdictional determination and taken jurisdiction over the merits

---

[8] Appellant is not suggesting that a stamp order can never be used to deny a motion for reconsideration.  For example, if an initial decision fully addresses the correct legal standard, a stamp order denial could be appropriate.  But where the initial decision fails to address both parts of a disjunctive legal test, a stamp order denying reconsideration of that issue does nothing to clarify or supplement the record.

of the case." *Id.* And a veteran's "informational disadvantage is at least as great, if not greater, at the jurisdictional stage of his case." *Id.* Recognizing the inequity in permitting the government to withhold such records during a jurisdictional dispute, *Barrett II* held that "the government *must* provide the Veterans Court (and the veteran) . . . all records in its possession relevant to contested jurisdictional issues." *Id.* at 1043-44 (emphasis added).

Moreover, *Barrett II* further held that there is also a "duty on the government to develop relevant facts in order to clarify the jurisdictional record," particularly due to the government's "access to medical staff that is supremely qualified to make determinations of mental incapacity." *Id.* at 1044.[9] Thus, where a veteran alleges facts meeting his threshold burden, the "government must assist the court by providing and, where necessary, procuring further evidence helpful in deciding jurisdiction, e.g., declarations, new medical examinations, and other forms of evidence as appropriate." *Id.* at 1044. This duty is affirmative—it *does not* require a request by the veteran or the Veterans Court. *Id.* at 1044 ("[t]he government shall make these submissions on its own initiative, upon request of the veteran, or as required by the Veterans Court."); *see also Toomer v. McDonald*, 783 F.3d 1229,

---

[9] *Barrett I* also recognized that the DVA "employs a host of medical professionals . . . uniquely qualified to facilitate the diagnosis of troubled claimants should such allegations arise." *Barrett I*, 363 F.3d at 1320.

1235 (Fed. Cir. 2015) (noting *Barrett II*'s duty requires the government to make "these submissions on its own initiative").

Here, the government has failed to comply with the *Barrett II* duty and the Veterans Court committed legal error by prematurely ruling on Mr. Calderon's mental illness without obtaining relevant records. Mr. Calderon alleged that his PTSD results in an "inability to concentrate," severe depression, and "increased forgetfulness on [his] part," causing him to "*never* complete all the things [he] needs to do." Appx29 (emphasis added). He further described to the Veterans Court that this causes him to be easily distracted by "small inconsequential tasks," ignoring ones that are more important. *Id.* He also explained that he takes significant medication, causing him to be even more forgetful. *Id.* These symptoms were further "intensified" by numerous events during the time period Mr. Calderon sought tolled—the care for and passing of his father, the care for and decline of his mother, and the contraction of COVID-19. *Id.*

Mr. Calderon also submitted signed correspondence from Dr. Victor—*a staff physician from the VA hospital* in Phoenix. Appx32. This letter indicates that Mr. Calderon is being treated for PTSD and major depressive disorder relating to his military service. *Id.* According to Dr. Victor, Mr. Calderon "continues to re-experience[] the traumatic event," and has "difficult concentrating" and "forgetfulness." *Id.* Dr. Victor further advised the Veterans Court that he could be

38

contacted if there were any "questions" concerning Mr. Calderon's symptomology. *Id.* There are also primary care notes as far back as 2011 indicating that Mr. Calderon began having memory loss. Appx34; *see also Ferry v. Shinseki*, No. 12-0798, 2012 WL 2752180, at *1 (Vet. App. July 10, 2012) (recognizing psychiatrist statements as satisfying the requirements for tolling due to mental illness). In sum, the record was replete with references to Mr. Calderon's treatment for memory loss—a symptom of his mental illnesses—including by VA itself.

With Mr. Calderon's submission, it should have been apparent to both the government and Veterans Court that additional medical documentation existed in Mr. Calderon's claim file. Yet, the government never "provide[d] the Veterans Court" or Mr. Calderon "all records in its possession" relevant to Mr. Calderon's PTSD, depression, and anxiety, the very conditions he relied upon to establish equitable tolling. *See Barrett II*, 466 F.3d at 1044-45. The government did not provide—and the Veterans Court did not request or review—any medical records from the VA hospital. Nor did the government or Veterans Court seek further clarification from Dr. Victor regarding Mr. Calderon's memory loss and difficultly concentrating. *Id.* at 1044 (noting that "declarations" or "new medical examinations" can be procured to assist with jurisdictional dispute); *see also Adams v. Principi*, 256 F.3d 1318, 1321-22 (Fed. Cir. 2001) (holding that "clarification . . .

can take the form of an explanation from [the examining doctor] of his opinion, or if necessary supplemental medical evidence").

The government's decision not to provide the records to Mr. Calderon and the Veterans Court's decision not to request or review them is especially baffling given the Board decision filed with the Veterans Court. The Board determined that "evidence show[ed] diagnoses of PTSD, major depressive disorder (MDD), and anxiety disorder." Appx14. The Board found that the evidence showed a "current diagnosis of PTSD, *diagnosed by VA in December 2015*." Appx18 (emphasis added). Similarly, the Board recognized that his major depressive disorder and anxiety disorder were "diagnosed by the VA" also in 2015. Appx21. Numerous VA and other medical records relating to his PTSD, depression, and anxiety are referenced in the Board decision. *See* Appx19 (referencing various "VA treatment records"); Appx21 (referencing "June 2014 VA examination," "May 2020 medical opinion," and "December 2020 medical opinion"); Appx22 ("June 2014 PTSD DBQ"). And it is clear from the Board's decision that the June 2014 VA examination discusses the memory loss associated with Mr. Calderon's PTSD. Appx21. *None* of these records—which are part of the RBA—was provided to Mr. Calderon or the Veterans Court.

The government itself has previously admitted it bears the duty to produce such records in a jurisdictional dispute. In *Dixon v. Shinseki*, 741 F.3d 1367 n.3

(Fed. Cir. 2014), the "government acknowledge[d] that *the VA is required* to produce relevant records from a veteran's claims file during the initial adjudication of a request for equitable tolling." (emphasis added). Here, even though the Board decision was before the Veterans Court, the VA failed to provide these records.

And the Veterans Court improperly determined it could decide the issue of equitable tolling without obtaining these records or providing the opportunity to Mr. Calderon to review them. The Veterans Court stated that it was Mr. Calderon's "burden to produce any evidence necessary to support the argument for equitable tolling." Appx3. While this is generally true, the Veterans Court appears to have placed the burden on Mr. Calderon to obtain and produce medical records in his claims file within the possession of VA. *Id.* That is inconsistent with *Barrett II* and the VA's duty to provide relevant medical records in a jurisdictional dispute.

Such VA medical records are clearly relevant. They may contain statements from medical professionals regarding the severity of Mr. Calderon's mental conditions—his PTSD, depression, anxiety, and associated memory loss—the direct issues at the heart of the equitable tolling inquiry. The Veterans Court determined that Mr. Calderon failed to meet his "burden" because his statements did not rise to the "level of showing" required. Appx4. But the Veterans Court did so without access to the medical records in Mr. Calderon's file. To determine that Mr. Calderon failed to meet his burden, while also depriving him of such records, is unjust and

41

inconsistent with *Barrett II*.  Indeed, this Court has previously emphasized that the Veterans Court "must frequently 'seek facts outside the record before the Board' in evaluating whether equitable tolling is warranted."  *Dixon*, 741 F.3d at 1377.

This was legal error.  This Court has "recognized . . . that where adoption of a particular legal standard dictates the outcome of a case based on undisputed facts, [this Court] may address that issue as a question of law." *Halpern v. Principi*, 384 F.3d 1297, 1306 (Fed. Cir. 2004); *see also Conley v. Peake*, 543 F.3d 1301, 1304 (Fed. Cir. 2008).  Here, the Secretary cannot dispute that the VA failed to provide these records to Mr. Calderon or the Veterans Court.  Nor can there be any dispute that the Veterans Court failed to request or review such records before dismissing Mr. Calderon's appeal.  Thus, the Veterans Court implicitly determined that it was Mr. Calderon's burden to obtain such records.  Similarly, the government must have determined that it did not need to provide such records.  *See Barrett II*, 466 F.3d at 1045 (holding that the "[t]he Secretary must provide the Veterans Court with any additional records in its possession that are relevant to the equitable tolling issue").

This is a violation of *Barrett II*'s core legal holding.  *See also Elliot*, 559 F. App'x at 1036 (finding error "as a matter of law" where Veterans Court "fail[ed] to consider whether evidence . . . may be a basis for equitable tolling.").  Mr. Calderon "does not ask" this Court to assess "the merits of [the] evidence" in his claims file; he only asks this Court to find that he was legally entitled to obtain such records.  *Id.*

42

The Court should thus remand the case and order that the government provide all relevant medical records in Mr. Calderon's file to the Veterans Court. *See Jones v. Nicholson*, 236 F. App'x 607 (Fed. Cir. 2007) ("when a veteran alleges facts to show entitlement to equitable tolling, and jurisdiction is called into question, the government must assist the court by providing and, where necessary, procuring further evidence helpful in deciding jurisdiction"); *Jensen v. Brown*, 19 F.3d 1413, 1417 (Fed. Cir. 1994) ("where evidence required to prove a fact is peculiarly within the knowledge and competence of one of the parties, fairness requires that party to bear the burden of coming forward.").

## CONCLUSION

For the foregoing reasons, Mr. Calderon respectfully requests a remand for reconsideration of whether the circumstances established in the record warrant equitable tolling under the appropriate legal standards and with consideration of the full record regarding Mr. Calderon's mental illnesses.

Date: August 26, 2024                    Respectfully submitted,

/s/ *Katherine A. Helm*
Katherine A. Helm
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

Shyam Shanker
DECHERT LLP
300 South Tryon Street, Suite 800
Charlotte, NC 28202
(704) 339-3160

*Counsel for Joseph L. Calderon*

44

# ADDENDUM

*Not Published*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No: 23-6177

JOSEPH L. CALDERON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

**JUDGMENT**

The Court has issued a decision in this case, and has acted on a motion under Rule 35 of the Court's Rules of Practice and Procedure.

Under Rule 36, judgment is entered and effective this date.

Dated: March 15, 2024                    FOR THE COURT:

                                         TIFFANY M. WAGNER
                                         Clerk of the Court

                                         By: /s/ Molly Atwell
                                         Deputy Clerk

Copies to:

Courtney L. Smith, Esq.

VA General Counsel (027)

Appx1

*Designated for electronic publication only*

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 23-6177

JOSEPH L. CALDERON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

Before LAURER, *Judge*.

**O R D E R**

*Note: Pursuant to U.S. Vet. App. R. 30(a),
this action may not be cited as precedent.*

On October 2, 2023, self-represented United States Army veteran Joseph L. Calderon filed a Notice of Appeal (NOA) appealing a March 27, 2023, Board of Veterans' Appeals (Board) decision. On October 27, 2023, the Secretary moved to dismiss the appeal since appellant didn't file his NOA within 120 days after the Board mailed its decision.[1] The Secretary also requested a stay pending the Court's review of his motion.

On November 30, 2023, the Court ordered appellant to explain why the Court shouldn't dismiss his appeal, and the Court granted the Secretary's motion to stay proceedings. In the order, the Court informed appellant that he could respond and explain why he delayed filing his NOA. He responded on December 20, 2023, and explained why he missed his filing date.

To be timely, an NOA generally must be filed with the Court within 120 days after the Board mailed notice of its decision.[2] If the Court receives an NOA more than 30 days after the filing period has expired,[3] the Court may equitably toll the period and treat the NOA as timely. For the Court to equitably toll the 120-day NOA period, appellant must show (1) an extraordinary circumstance, (2) due diligence in trying to file, and (3) a connection between the extraordinary circumstance and the failure to timely file.[4] "Equitable tolling is not 'limited to a small and closed

---

[1] Secretary's Motion to Dismiss at 1-4.

[2] 38 U.S.C. § 7266(a).

[3] If the Court receives an NOA within 30 days after the filing deadline, the Court will treat the appeal as timely if appellant shows good cause or excusable neglect for failing to file the NOA on time. U.S. VET. APP. R. 4(a)(3)(B)(i).

[4] *See Toomer v. McDonald*, 783 F.3d 1229, 1238 (Fed. Cir. 2015); *Checo v. Shinseki*, 748 F.3d 1373, 1378

Appx2

set of factual patterns,'" and the Court must consider whether it's warranted on a "'case-by-case basis,'" "'avoiding mechanical rules'" and observing "'the need for flexibility.'"[5] It's appellant's burden to produce any evidence necessary to support the argument for equitable tolling.[6] The Court decides whether equitable tolling is proper based on a review of the specific circumstances of the individual appeal.[7]

Appellant asserts that, from March 22, 2023, to April 4, 2023, he traveled between the United States and Mexico to care for his ailing father.[8] During that time, the Board mailed its March 27, 2023, decision. Appellant included copies of his flight records, rental car receipt, and "selfies" (self-portrait photographs) that he took with his father on the return flight home.[9] From April 4 to May 30, 2023, he cared for his father until his father was accepted into a medical care facility.

He next details several health issues in his family from August and September 2023.[10] First, he says that his wife contracted COVID-19 on August 15, 2023, had a cellulitis infection 2 days after that, and had an allergic reaction to medication later that month.[11] He then explains that his father sadly passed away on August 30, 2023.[12] He next states that he and his wife contracted COVID-19 in September.[13] Finally, he notes that his mother's health began declining around June 2023 and that she unfortunately passed away on December 1, 2023. He states that because of these events, he's unable to recall the exact date that he realized he missed his filing date. But appellant says that he recalls immediately trying to respond when he learned his NOA was late.[14]

Appellant also explains that he has posttraumatic stress disorder (PTSD), which affects his sleep and memory.[15] He asserts that the pressure he was under from these events made his sleep patterns worse than usual, leading to periods when he would sleep to excess and other times when he couldn't fall asleep at all.[16] As support for this, he included a letter from his psychiatrist that

---

(Fed. Cir. 2014); *McCreary v. Nicholson*, 19 Vet.App. 324, 332 (2005), *adhered to on reconsideration*, 20 Vet.App. 86 (2006).

[5] *Sneed v. Shinseki*, 737 F.3d 719, 726 (Fed. Cir. 2013) (citations omitted).

[6] *See Palomer v. McDonald*, 27 Vet.App. 245, 251 (2015) (per curiam order), *aff'd*, 646 F. App'x. 936 (Fed. Cir. 2016).

[7] *Palomer*, 27 Vet.App. at 251.

[8] Appellant's Response at 1-2.

[9] Appellant's Response at 10-15.

[10] Appellant's Response at 1-2.

[11] Appellant's Response at 1-2. Appellant included prescription information for the medicine associated with his wife's illnesses. Appellant's Response at 17-20.

[12] Appellant's Response at 2.

[13] Appellant's Response at 2.

[14] Appellant's Response at 2.

[15] Appellant's Response at 1.

[16] Appellant's Response at 1.

confirms appellant's difficulty with sleeping, as well as difficulty concentrating and forgetfulness.[17]

While the Court is sympathetic to the events that appellant describes in the past year, it concludes that equitable tolling isn't warranted. Even if the Court were to accept that appellant satisfies the extraordinary circumstance by caring for his father between April 4 and May 30, he fails to explain why he wasn't able to file his NOA between May 30 and August 15, 2023, when his wife was ill. Even in the face of an extraordinary circumstance, an appellant must show that he exercised due diligence in trying to file the NOA.[18] Appellant has explained that he made an immediate effort to file his NOA once he discovered it was late,[19] but he doesn't account for the time period after he stopped providing in-home care for his father. And the Court is unconvinced that appellant's caring for his sick parent is an extraordinary circumstance warranting equitable tolling.[20] True, appellant was out of the country when the Board mailed the decision, but he was back home within 9 days of the Board's decision. And appellant's NOA was late by 69 days. Thus, appellant hasn't shown that he exercised due diligence to preserve his appeal rights or that extraordinary circumstances prevented him from timely pursuing his appeal.

Appellant explained that his health was a factor in his untimely NOA, describing both mental and physical illnesses.[21] Both types of illnesses can justify equitable tolling in certain scenarios, but appellant has the burden of proving that the "particular infirmity" caused him to be "'incapable of handling [his] own affairs or unable to function [in] society.'"[22] And here, appellant hasn't met his burden. The Court recognizes that appellant's PTSD causes him to lose sleep and makes him forgetful, but this doesn't rise to the level of showing that he couldn't handle his own affairs.[23]

The Court determines that equitable tolling isn't warranted here.[24] Appellant hasn't established an extraordinary circumstance beyond being out of the country for 9 days. Because appellant filed his NOA 69 days after the 120-day deadline, the Court must dismiss his appeal.[25]

---

[17] Appellant's Response at 1-2.

[18] *But see Craig-Davidson v. McDonough*, 35 Vet.App. 281, 293 (2022) (per curiam order) (noting that it would "illogical" to expect an appellant to exercise due diligence during the extraordinary circumstance that rendered the appellant incapable of handling affairs).

[19] Appellant's Response at 2.

[20] *Cf. Davis v. Principi*, 17 Vet.App. 29, 33 (2003) (finding that missing mail from VA because of incarceration didn't merit equitable tolling because appellant didn't exercise due diligence in updating his address with VA).

[21] Appellant's Response at 1-2.

[22] *Craig-Davidson*, 35 Vet.App. at 287 (quoting *Arbas v. Nicholson*, 403 F.3d 1379, 1381 (Fed. Cir. 2005)).

[23] *See Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004).

[24] *Sneed*, 737 F.3d at 726.

[25] *McCreary*, 19 Vet.App. at 326 (noting that dismissal is the proper outcome when an appellant fails to timely file an NOA and equitable tolling doesn't apply.).

For these reasons, it is

ORDERED that the stay of proceedings in this appeal is lifted. It is also

ORDERED that the Secretary's October 27, 2023, motion to dismiss is granted, and this appeal is DISMISSED.

DATED: February 2, 2024                    BY THE COURT:

                                           SCOTT J. LAURER
                                           Judge

Copies to:

Joseph L. Calderon

VA General Counsel (027)

4

**Appx5**

## UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

| | | |
|---|---|---|
| JOSEPH L. CALDERON, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **No. 23-6177** |
| | ) | |
| DENIS MCDONOUGH, | ) | |
| Secretary of Veterans Affairs, | ) | |
| Appellee. | ) | |

> **MOTION DENIED**
>
> *[signature]*
>
> **Scott J. Laurer**
> **Judge**
> March 15, 2024

### APPELLANT'S MOTION UNDER RULE 35(a) FOR SINGLE-JUDGE RECONSIDERATION

Appellant Joseph L. Calderon, though counsel, respectfully requests reconsideration of the Court's February 2, 2024, decision granting the Secretary's October 27, 2023, motion, which dismissed Mr. Calderon's appeal of a March 27, 2023, Board of Veteran's Appeals (BVA) decision denying entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), depression, and anxiety as untimely.

Specifically, Appellant requests the Court reconsider its findings that Appellant's own health did not warrant equitable tolling and that Appellant failed to explain why he was unable to file his NOA between May 30, 2023, and August 15, 2023. In its decision, the Court found that Appellant had the burden of proving his "particular infirmity" rendered him "incapable of handling [his] own affairs or unable to function [in] society." *Craig-Davidson v. McDonough*, 35 Vet. App. 281 (2022). Appellant requests the Court reconsider its finding in light of the complete standard set forth for evaluating mental health conditions and equitable tolling. As described in *Arbas*, the test is "whether the particular infirmity of the veteran prevented him from engaging in 'rational thought or deliberate

Appx6

decision making' **or** rendered him 'incapable of handling [his] own affairs or unable to function [in] society.'" *Arbas v. Nicholson*, 403 F.3d at 1381 (Fed. Cir. 2005)(emphasis added). The Court's February 2, 2024, decision focuses solely on whether Appellant was incapable of handing his own affairs and does not address whether equitable tolling could be warranted when Appellant's mental health prevented him from rational thought or deliberate decision making.

In addition, Appellant requests the Court reconsider the evidence presented through the compassionate lens set forth in *Barrett v. Principi*, 363 F.3d 1316 (Fed. Cir. 2004). As the Federal Circuit discussed, [i]t would be both ironic and inhumane to rigidly implement section 38 U.S. 7266(a) because the condition preventing a veteran from timely filing is often the same illness for which compensation is sought. *Barrett*, 363 F.3d at 1320. As to his PTSD, Appellant's response notes that he takes medication and sleeps 10-14 hours a day which makes him forgetful. A letter dated November 21, 2023, from his VA psychiatrist notes that he avoids any stimuli associated with the trauma relating to his PTSD experiences and suffers from memory loss. A primary care note dated June 7, 2011, states that Appellant suffers from memory losses. Additionally, as seen in the Appellant's submission to the Court he was taking Buspirone as of June 26, 2023, which is used to treat general anxiety disorder.

Appellant further requests the Court reconsider its determination that he failed to account for the time between May 30, 2023, and August 15, 2023. As described in the documents submitted, Appellant was providing in home care for his ill mother who died in December 2023. Two letters submitted by Appellant with his Response from his mother's

Appx7

doctors confirmed that she suffered from Alzheimer's and would benefit from having a family member provide care. Appellant's mother gave him Power of Attorney and a letter dated December 13, 2023, confirmed that Appellant was providing in home care for his mother during the time frame identified by the Court. Appellant's mother also had various emergency room visits from March through November 2023 including June 7, 2023.

Therefore, Mr. Joseph L. Calderon respectfully requests reconsideration and reversal of the Court's decision.

Respectfully submitted,

DATE: February 23. 2024

*/s/ Courtney L. Smith*
Courtney L. Smith, Esq.
The Veterans Consortium Pro Bono Program
2101 L Street, NW, Suite 225
Washington, DC 20037
(202) 628-8164

## <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  This brief contains 9,622 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: August 26, 2024    /s/ *Katherine A. Helm*

Katherine A. Helm