# United States Court of Appeals for the Federal Circuit

JOSEPH L. CALDERON,

*Claimant-Appellant,*

— v. —

DENIS MCDONOUGH,

*Respondent-Appellee.*

*On Appeal from the United States Court of Appeals for Veterans Claims in No. 23-6177, Honorable Scott J. Laurer, Judge*

## APPELLANT'S REPLY BRIEF

KATHERINE A. HELM
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
khelm@dechert.com

— and —

SHYAM SHANKER
DECHERT LLP
300 South Tryon Street, Suite 800
Charlotte, North Carolina 28202
(704) 339-3160
shyam.shanker@dechert.com

*Counsel for Appellant Joseph L. Calderon*

JANUARY 16, 2025

 COUNSEL PRESS    (800) 4-APPEAL • (335796)

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................ ii

INTRODUCTION ................................................................. 1

ARGUMENT .................................................................... 1

    A.    The Veterans Court Did Not Apply a Flexible, Individualized Analysis ................................................................ 1

        1.    The Question Is Which Legal Standard the Veterans Court Applied, Not Which Standard It Recited ........................ 2

        2.    The Veterans Court Applied a Categorical Rule, Not a Case-by-Case Analysis ............................................... 3

        3.    Even if the Veterans Court Applied an Individualized Analysis to Mr. Calderon's Father, It Legally Erred by Failing to Address the In-Home Care for Mr. Calderon's Mother ................................................................ 5

    B.    The Secretary Does Not Dispute that the Veterans Court's Due Diligence Analysis Was Improper ...................................... 9

        1.    The Veterans Court Did Not Analyze Due Diligence During the Alleged Periods of Extraordinary Circumstance ........................................................ 10

        2.    This Court Lacks Jurisdiction to Make New Factual Findings ................................................................ 12

    C.    The Veterans Court Committed Legal Errors Regarding Evaluating Mr. Calderon's Mental Illness ............................ 13

        1.    The Secretary Does Not Dispute that the *Barrett I* Inquiry Is Disjunctive .................................................... 14

        2.    The Veterans Court and the Government Legally Failed to Obtain and Provide Evidence to Mr. Calderon in Violation of *Barrett II* ............................................ 18

      3.     The Court Should Address the Merits of the *Barrett II* Issue on Appeal ........................................................................21

CONCLUSION ........................................................................................24

CERTIFICATE OF COMPLIANCE ......................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Automated Merch. Sys., Inc. v. Lee*,
782 F.3d 1376 (Fed. Cir. 2015) .........................................................22

*Barrett v. Nicholson*,
466 F.3d 1038 (Fed. Cir. 2006) ..................................................*passim*

*Bernklau v. Principi*,
291 F.3d 795 (Fed. Cir. 2002) ..............................................................8

*Bulgier v. McDonough*,
No. 24-4173, 2024 WL 4981749 (Vet. App. Dec. 5, 2024) ..............16

*Checo v. Shinseki*,
748 F.3d 1373 (Fed. Cir. 2014) ................................................9, 10, 11

*Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories,
Inc.*,
80 F.4th 1363 (Fed. Cir. 2023) ..........................................................21

*Conyers v. McDonough*,
91 F.4th 1167 (Fed. Cir. 2024) .....................................................16, 17

*Elliott v. Shinseki*,
559 F. App'x 1034 (Fed. Cir. 2014) .....................................................7

*Federal Trade Comm'n v. Penn State Hershey Med. Ctr.*,
838 F.3d 327 (3d Cir. 2016) ...............................................................17

*Hartman v. Shinseki*,
493 F.3d 1311 (Fed. Cir. 2007) ............................................................8

*Hormel v. Helvering*,
312 U.S. 552 (1941)............................................................................21

*James v. Shulkin*,
29 Vet. App. 127 (2017) ....................................................................3, 4

*James v. Wilkie*,
    917 F.3d 1368 (Fed. Cir. 2019) .................................................3, 4, 5

*Menegassi v. Shinseki*,
    638 F.3d 1379 (Fed. Cir. 2011) ..........................................................12

*Moreno v. Shinseki*,
    No. 09-279, 2012 WL 1402999 (Vet. App. Apr. 24, 2012) ..............15

*Perciavalle v. McDonough*,
    74 F.4th 1374 (Fed. Cir. 2023) ..........................................................12

*Petite v. McDonough*,
    No. 23-1577, 2024 WL 5114136 (Fed. Cir. Dec. 16, 2024) ...............2

*Pruitt v. Mote*,
    503 F.3d 647 (7th Cir. 2007) ..............................................................17

*Singleton v. Wulff*,
    428 U.S. 106 (1976)............................................................................21

*Skaar v. McDonough*,
    48 F.4th 1323 (Fed. Cir. 2022) ..........................................................14

*Sneed v. McDonald*,
    819 F.3d 1347 (Fed. Cir. 2016) ...................................................10, 17

*Sneed v. Shinseki*,
    737 F.3d 719 (Fed. Cir. 2013) ..............................................................3

*Sterling v. Shulkin*,
    712 F. App'x 1001 (Fed. Cir. 2018) .....................................................7

*Toomer v. McDonald*,
    783 F.3d 1229 (Fed. Cir. 2015) .................................................4, 19, 20

*Valentin v. McDonald*,
    No. 15-4056, 2016 WL 800257 (Vet. App. Mar. 1, 2016) ................15

*Williams v. Peake*,
    No. 05-3347, 2008 WL 2132306 (Vet. App. May 20, 2008)..............24

**Statutes**

38 U.S.C. § 7292(d)(2)............................................................................12

## INTRODUCTION

The Veterans Court's decision in Mr. Calderon's case is fundamentally flawed and warrants remand for further proceedings. The Veterans Court applied incorrect and incomplete legal standards, failed to consider a critical basis for equitable tolling raised by Mr. Calderon, and neglected to evaluate pertinent medical records that were withheld from both Mr. Calderon and the court. While equitable tolling is granted sparingly, when veterans like Mr. Calderon are denied access to judicial review, they deserve—at a minimum—decisions which apply the correct and full legal standards and do not overlook independent bases for tolling. The Veterans Court's failure to meet these standards necessitates a remand to ensure a fair and just adjudication of Mr. Calderon's claims.

## ARGUMENT

### A. The Veterans Court Did Not Apply a Flexible, Individualized Analysis

The Veterans Court either applied a categorical rule that caring for a sick parent was not an extraordinary circumstance, or it committed legal error by failing to address an independent basis for tolling—Mr. Calderon's in-home care for his mother. The Secretary only responds to the former argument, but never the latter. Regardless, the Veterans Court did in fact apply a categorical rule. And the application of that categorical rule accounts for the court's failure to address the in-

1

home care provided to Mr. Calderon's mother after it held that it was "unconvinced" that caring for a sick parent was an extraordinary circumstance. Appx4.

But, even if the Secretary is correct that the court conducted an individualized analysis regarding the care provided to Mr. Calderon's father, *i.e.*, his "sick *parent*," Appx4, the Veterans Court then failed to consider the in-home care provided to Mr. Calderon's mother. The failure to consider an entire basis for tolling is also an error of law which warrants remand.

### 1. The Question Is Which Legal Standard the Veterans Court Applied, Not Which Standard It Recited

The question before this Court is which legal standard the Veterans Court applied, not which legal standard it recited. The Secretary relies heavily on the Veterans Court's statement that equitable tolling is considered on a "case-by-case basis" when it recited the legal standard. Sec. Br. at 11 (stating that the "Veterans Court explicitly acknowledged that it must consider equitable tolling on a case-by-case basis"); Appx3. Thus, according to the Secretary, the Veterans Court must have applied a "[f]lexible, [i]ndividualized" analysis because the Veterans Court "relied upon this Court's precedent" to explain the standard for equitable tolling. *Id.* Not so. Even if the Veterans Court recited the correct standard, the court still incorrectly applied it. This Court has emphasized that the question is whether the "Veterans Court actually used the test that it espoused." *Petite v. McDonough*, No. 23-1577, 2024 WL 5114136, at *2 (Fed. Cir. Dec. 16, 2024) ("Here, the Veterans Court

2

correctly quoted the legal standard but then did not use it"); *see also Sneed v. Shinseki*, 737 F.3d 719, 724, 726-27 (Fed. Cir. 2013) (vacating a Veterans Court decision for applying an "improperly narrow standard").

Indeed, in *James v. Wilkie*, 917 F.3d 1368 (Fed. Cir. 2019), the Court rejected this same argument. There, the Veterans Court also cited *Sneed v. Shinseki* and stated that "equitable tolling . . . must be assessed on a case-by-case basis." *James v. Shulkin*, 29 Vet. App. 127, 129 (2017). But despite the citation of the correct legal standard, this Court held that, in practice, the Veterans Court applied a "categorical determination." *James*, 917 F.3d at 1373-74. The question was "which legal standard the tribunal *applied*, not which standard it recited." *Id.* at 1374.

Here, the Veterans Court's "acknowledge[ment]" that equitable tolling is applied "on a case-by-case basis" does not shield the dismissal order from any challenge that the Veterans Court failed to apply that standard. Sec. Br. at 11, 13. As explained below, the Veterans Court applied a categorical determination that caring for an ill parent is not an extraordinary circumstance, not the case-by-case analysis required by this Court's precedent.

## 2. The Veterans Court Applied a Categorical Rule, Not a Case-by-Case Analysis

The Secretary does not dispute that that equitable tolling is "not 'limited to a small and closed set of factual patterns'" or that the extraordinary circumstance element requires a "case-by-case analysis and not a categorical determination."

*Toomer v. McDonald*, 783 F.3d 1229, 1239 (Fed. Cir. 2015); *James*, 917 F.3d at 1373. Instead, the Secretary argues the Veterans Court must have applied a case-by-case analysis because it was unconvinced that "appellant's caring for *his* sick parent is an extraordinary circumstance." Appx4 (emphasis added); Sec. Br. at 13. The Secretary appears to argue that the word "his" necessarily reflects an individualized analysis. Not so. In the full context of the court's decision, this statement reflects a categorical rule.

The Veterans Court's use of the phrase "his sick parent" merely reflects that the Veterans Court was addressing the in-home care provided to Mr. Calderon's parent. Appx4 (addressing "caring for his father"). That alone does not rule out the Veterans Court's application of a categorical rule with respect to the care provided to Mr. Calderon's parents. The Veterans Court's only rationale was that it was "unconvinced" that such care could be an extraordinary circumstance—a categorical rule. Appx4. The words "his sick parent" alone do not mean that the Veterans Court applied an individualized determination.[1] In *James*, the Veterans Court similarly stated that a "fallen mailbox flag is not an extraordinary circumstance *beyond the appellant's control* that warrants equitable tolling." *James*, 29 Vet. App. at 130 (emphasis added). That statement could have also been interpreted to mean that a

---

[1] Indeed, the Veterans Court may have been "unconvinced" because it determined that caring for an ill parent does not qualify as an extraordinary circumstance.

fallen mailbox flag was not an extraordinary circumstance beyond the appellant's control in that case. But this Court held that the Veterans Court applied was a categorical rule and vacated the Veterans Court's dismissal. *James*, 917 F.3d at 1373-74. In doing so, this Court held that the Veterans Court "did not perform a case-specific analysis" of the veteran's case. *Id.* at 1373.

The same is true here. The Veterans Court's statement that it was "unconvinced that appellant's caring for his sick parent is an extraordinary circumstance" was a categorical determination. Appx4-5. The Secretary doesn't grapple with fact that the Veterans Court ***never*** addressed whether Mr. Calderon's in-home care for his mother from June to December 2023 was an extraordinary circumstance. Appx3; *see also* Appx101. If the Veterans Court applied the proper case-by-case standard, it should have also assessed whether the in-home care for his mother was an extraordinary circumstance. The failure to do so supports Mr. Calderon's reading of the Veterans Court's opinion, as the application of a categorical rule would explain this omission from the Veterans Court's opinion.

### 3. Even if the Veterans Court Applied an Individualized Analysis to Mr. Calderon's Father, It Legally Erred by Failing to Address the In-Home Care for Mr. Calderon's Mother

As Mr. Calderon argued in the opening brief, even if the Veterans Court did not adopt a categorical rule, it "erred as a matter of law by failing to even consider or address whether the months of in-home care to Mr. Calderon's mother can be a

5

basis for equitable tolling." App. Br. at 22 n.1, 17 ("[e]ither the Veterans Court erred by adopting a categorical rule, or it erred as a matter of law by failing to address whether the in-home care provided to Mr. Calderon's mother could be a basis for equitable tolling."). The Secretary inexplicably does not respond to this argument even though it was raised as one of the issues on appeal. App. Br. at 4. Simply put, even if the Veterans Court applied an individualized analysis regarding Mr. Calderon's care for his father, the Veterans Court still committed legal error by not addressing the in-home care provided to his mother.

The Veterans Court holding regarding a lack of extraordinary circumstance only comes in the context of "caring for [Mr. Calderon's] father between April 4 and May 30." Appx4. Indeed, the Veterans Court's extraordinary circumstance holding refers to "his sick *parent*," not parents. Appx4 (emphasis added). And the Veterans Court stated that Mr. Calderon did not "account for the time period after he stopped providing in-home care for his father," even though Mr. Calderon provided evidence that he then provided in-home care for his mother. Appx4; Appx101. The Veterans Court just ***never*** addressed whether Mr. Calderon's in-home care for his mother from June to December 2023 is also an extraordinary circumstance—an entirely separate basis for equitable tolling. Appx3; Appx101; Appx103; Appx53-59.

The Secretary admits that equitable tolling requires a case-by-case analysis of each circumstance to determine whether it is extraordinary. Sec. Br. at 9-10. But

the Secretary offers no defense of the Veterans Court's failure to conduct such an analysis for the June to December period when Mr. Calderon cared for his mother. Indeed, the Secretary agrees that Mr. Calderon's submission to the Veterans Court "stated that he had been caring for his mother" and noted her declining health from "June 2023" until she passed away. Sec. Br. at 4.

There are only two explanations for this omission from the Veterans Court's opinion, both of which warrant remand. The first is that the Veterans Court in practice applied a categorical rule that caring for a sick parent is not an extraordinary circumstance. Thus, after the Veterans Court had dispensed of Mr. Calderon's arguments regarding the care for his father on this ground, it had no need to address the care provided to Mr. Calderon's mother. The second is that the Veterans Court failed to consider whether the in-home care provided to Mr. Calderon's mother from June to December 2023 could toll the statute of limitations. This too would be legal error. *See Elliott v. Shinseki*, 559 F. App'x 1034, 1037 (Fed. Cir. 2014) ("The Veterans Court erred to the extent that it failed to consider [veteran's] equitable tolling claim"); *Sterling v. Shulkin*, 712 F. App'x 1001, 1003 (Fed. Cir. 2018) (vacating the Veterans Court's decision to dismiss a veteran's appeal as untimely because the court "erred by not considering whether equitable tolling should apply").

At most, the Secretary contends that the Veterans Court did not need to provide a complete written analysis because there is "no statute or rule" that requires

7

"an exhaustive written discussion as to each issue." Sec. Br. at 13. But implicit in the Secretary's position is that there must be *some* written discussion of the equitable tolling issues raised, even if not "exhaustive." Failing to address a piece of evidence is not the same as ignoring an independent basis for equitable tolling. The Secretary's position would permit the Veterans Court to address one basis for equitable tolling alleged by a veteran, but ignore any other bases alleged, because an "exhaustive written discussion" is not required. This should not be the law.

This Court's decisions in *Bernklau* and *Hartman* are not to the contrary. They note that a litigant has a right "to have all issues fully considered." *Bernklau v. Principi*, 291 F.3d 795, 801 (Fed. Cir. 2002); *Hartman v. Shinseki*, 493 F.3d 1311, 1315 (Fed. Cir. 2007). While both also hold that this does not equate to a right to a "*full* written opinion on every issue raised" by "appellate court[s]," that does not mean that courts are entitled to put forth *no* written opinion on issues first raised with those courts. *Id.*[2] (emphasis added). Here, the Veterans Court provided no opinion addressing the in-home care provided to Mr. Calderon's mother. While the Veterans

---

[2] Because the issue of equitable tolling is *first* raised at the Veterans Court, not the Board, it is even more important that each alleged basis for tolling be addressed by the Veterans Court. Thus, this case is unlike other cases where a lower court's opinion fully addresses the relevant issues, and an appellate court summarily affirms that decision. Mr. Calderon is not suggesting that the latter is inappropriate.

Court notes that her health declined, it never mentions that Mr. Calderon provided in-home care for her during this period.  Appx3.

This error was not harmless.  June 1, 2023 to October 2, 2023 is a period of 123 days.  The Veterans Court determined that Mr. Calderon filed his Notice of Appeal 69 days late.  Appx2-5.  Had the Veterans Court considered whether the June to October period could be subject to equitable tolling due to Mr. Calderon's need to care for his mother, it may have tolled the statute of limitations.

## B.    The Secretary Does Not Dispute that the Veterans Court's Due Diligence Analysis Was Improper

The Secretary admits that *Checo* requires due diligence *during* the period of extraordinary circumstances, not afterwards.  *See Checo v. Shinseki*, 748 F.3d 1373, 1380 (Fed. Cir. 2014).  The only factual finding regarding diligence was the Veterans Court's finding that Mr. Calderon didn't explain why he couldn't file his NOA *after* he stopped caring for his father.  But this analysis fundamentally conflicts with *Checo*. It is apparent from the decision that the Veterans Court operated on the misunderstanding that diligence must be shown after an extraordinary circumstance ends.  This was legally erroneous, and the Secretary's remaining arguments improperly ask this Court to make new fact findings, which this Court lacks jurisdiction to do.

### 1. The Veterans Court Did Not Analyze Due Diligence During the Alleged Periods of Extraordinary Circumstance

The Secretary admits that *Checo v. Shinseki* "requires a showing of due diligence only during the period of extraordinary circumstances, not after." Sec. Br. at 14; *see also Sneed v. McDonald*, 819 F.3d 1347, 1353 (Fed. Cir. 2016) (requiring "reasonable diligence . . . during the alleged extraordinary circumstance period.").

Here, the Veterans Court made only ***one*** due diligence factual finding— "[e]ven if [it] were to accept that [Mr. Calderon] satisfies the extraordinary circumstance by caring for his father between April 4 and May 30, he fails to explain why he wasn't able to file his NOA between May 30 and August 15, 2023," when Mr. Calderon's wife became ill. Appx4. Mr. Calderon's wife became ill on August 15. *Id.* The Veterans Court adopted the view that—even if it accepted that caring for his father was an extraordinary circumstance—a lack of diligence *after* Mr. Calderon stopped caring for his father justified rejecting Mr. Calderon's equitable tolling claim. But the proper inquiry was whether Mr. Calderon was reasonably diligent *during* the period he cared for his father, not after.

In this regard, Mr. Calderon submitted evidence that he had to travel to Mexico and then was preoccupied providing 24-hour home care to his father for safety and supervision. *See* Appx29; Appx6. He also submitted evidence explaining that his PTSD and documented memory loss causes him to forget important tasks, delaying completion of those tasks. Appx29; Appx32; Appx34. Considering these

circumstances, the Veterans Court may have concluded that Mr. Calderon was reasonably diligent. But the Veterans Court made no such findings because it applied an incorrect legal standard.

The Secretary nevertheless attempts to recharacterize the Veterans Court's diligence holding, claiming that the "Veterans Court was not requiring a showing of due diligence after an extraordinary circumstance." Sec. Br. at 15. Instead, the Secretary claims that the Veterans Court was simply "explaining why the period between May 30 and August 15 did not qualify as an extraordinary circumstance . . . because Mr. Calderon failed to show how the circumstance of his wife being sick prevented him from timely filing his appeal." *Id.* Not so. Mr. Calderon's wife became ill on August 15—not between May 30 and August 15. Appx29 ("contracted Covid 19" on "August 15"). And the Veterans Court stated that it found lack of "due diligence" because Mr. Calderon didn't "account for the time period after he stopped providing in-home care for his father." Appx4. This was legal error under *Checo*.

The Secretary finally argues that there was "no need" for the Veterans Court to address due diligence because it had already determined that Mr. Calderon failed to show an extraordinary circumstance. Sec. Br. at 15. But, as explained above, see *supra* 1-9, the Veterans Court's extraordinary circumstance analysis was fraught with legal error.

### 2. This Court Lacks Jurisdiction to Make New Factual Findings

Recognizing that the Veterans Court failed to make any other diligence factual findings, the Secretary resorts to arguing that Mr. Calderon failed to point to "any evidence" that he acted with due diligence. Sec. Br. at 14. But this was not a finding by the Veterans Court. The Veterans Court's finding was limited to the period between May 30 and August 15. *See* Appx4. Contrary to the Secretary's position, the Veterans Court recognized that Mr. Calderon's PTSD "affects his sleep and memory" and that Mr. Calderon immediately attempted to file his NOA once he realized it was late. Appx3.

The Secretary essentially asks this Court to make a harmless error determination on appeal with respect to diligence. Sec. Br. at 14. Yet the Secretary elsewhere admits that the Veterans Court's "weighing of the evidence and its factual findings are beyond this Court's jurisdiction." Sec. Br. at 20. This Court has "no authority to review, much less determine, the facts in veterans' cases." *Perciavalle v. McDonough*, 74 F.4th 1374, 1381-82 (Fed. Cir. 2023). And this Court also "lack[s] authority to make a fact-based determination of harmless error." *Id.* (citing *Conway v. Principi*, 353 F.3d 1369, 1375 (Fed. Cir. 2004) and *Wood v. Peake*, 520 F.3d 1345, 1351 (Fed. Cir. 2008)). Pursuant to 38 U.S.C. § 7292(d)(2), a "harmless error analysis of the Veterans Court's judgment cannot be conducted when the analysis would require 'fact-finding and/or application of law to fact.'" *Menegassi*

*v. Shinseki*, 638 F.3d 1379, 1383 (Fed. Cir. 2011). Here, the issue of whether Mr. Calderon exercised reasonable diligence *during* the period of each alleged extraordinary circumstance requires factual determinations the Veterans Court did not make. Remand is therefore necessary.

## C. The Veterans Court Committed Legal Errors Regarding Evaluating Mr. Calderon's Mental Illness

The Secretary does not dispute that the *Barrett I* standard for mental illness is a disjunctive inquiry. Sec. Br. at 16-17. Nor does the Secretary contend that the Veterans Court made any findings regarding whether Mr. Calderon's mental illness and memory loss rendered him incapable of rational thought or deliberate decision making. Instead, the Secretary argues that the Veterans Court "clearly recognized" the full legal standard by citing a different order issued by the Veterans Court's Clerk. Sec. Br. at 19 (citing Appx11). The dismissal opinion's failure to address the complete legal standard necessitates vacatur and remand.

The Secretary also does not dispute that there were relevant medical records not provided to Mr. Calderon, or the Veterans Court, regarding Mr. Calderon's PTSD and memory loss. This was so even though the Board's decision—which was in the record—repeatedly cited them. *See, e.g.*, Appx19 (referencing various "VA treatment records"). *Barrett II* did not merely recognize a "general practice" of providing such records; it imposed a *duty* on the government to provide the Veterans Court records helpful in deciding jurisdiction. Sec. Br. at 24. The Court should

address the merits of this argument; otherwise, the VA will be incentivized to withhold relevant records from unsuspecting *pro se* veterans seeking to establish jurisdiction, only for the VA to argue waiver on appeal.

### 1. The Secretary Does Not Dispute that the *Barrett I* Inquiry Is Disjunctive

As the Secretary admits, the Veterans Court understood that Mr. Calderon was arguing in-part that "he may be entitled to equitable tolling based on mental illness." Sec. Br. at 18. The Secretary also does not dispute that equitable tolling for mental illness under *Barrett I* can occur where the illness *either* "render[s] him incapable of rational thought or deliberate decision making, or incapable of handling [his] own affairs or unable to function [in] society." Sec. Br. at 17 (quoting *Barrett v. Principi*, 363 F.3d 1316, 1321 (Fed. Cir. 2004)). Nor does the Secretary dispute that this test is disjunctive, and that each prong is not duplicative.

The question is therefore whether the Veterans Court applied the *complete* test in evaluating Mr. Calderon's mental illness-based tolling arguments. *Skaar v. McDonough*, 48 F.4th 1323, 1331 (Fed. Cir. 2022) ("[W]hether the Veterans Court applied the correct legal standard for equitable tolling is a question of law [this Court] review[s] de novo."). It did not. The Veterans Court stated that Mr. Calderon's showing regarding his PTSD did not rise to the level of showing that "he couldn't handle his own affairs." Appx4. The court also stated that Mr. Calderon had the burden of proving that his PTSD rendered him "incapable of handling [his]

14

own affairs or unable to function [in] society." Appx4. The Secretary argues the same, pointing to these findings by the Veterans Court. Sec. Br. at 6, 18 (referring to court's finding regarding whether Mr. Calderon was "rendered incapable of handling his own affairs").

But Mr. Calderon never disputed that the Veterans Court addressed the "incapable of handling his own affairs" part of the *Barrett I* inquiry. His position is that it was legal error for the Veterans Court to *only* address that prong of *Barrett I*. Nowhere in the Veterans Court's decision does it make any findings regarding whether Mr. Calderon's PTSD impeded rational thought or his decision making during the period he seeks to toll. *See* Appx2-5.

Indeed, other Veterans Court decisions have had no trouble applying the complete *Barrett I* standard. *See, e.g.*, *Moreno v. Shinseki*, No. 09-279, 2012 WL 1402999, at *2 (Vet. App. Apr. 24, 2012) (holding that appellant did not prove that blindness "prevented him from engaging in rational though or deliberate decision making or that it rendered him incapable of handling his own affairs or unable to function in society"); *Valentin v. McDonald*, No. 15-4056, 2016 WL 800257, at *2 (Vet. App. Mar. 1, 2016) ("Ms. Valentin . . . has not presented sufficient evidence showing that her physical and mental disabilities rendered her incapable of rational thought or deliberate decision making, incapable of handling her own affairs, or unable to function in society for the period of time she is seeking to toll."). And

recent Veterans Court decisions have done the same. *See Bulgier v. McDonough*, No. 24-4173, 2024 WL 4981749, at *2 (Vet. App. Dec. 5, 2024) (finding insufficient evidence to show that "blindness prevents him from engaging in rational thought or deliberate decision making, or that it renders him incapable of handling his own affairs").

Recognizing that the Veterans Court's opinion says nothing about this part of the *Barrett I* inquiry, the Secretary contends there is no error because the Veterans Court "clearly recognized that tolling could be established by a failure to engage in rational thought or deliberate decision making." Sec. Br. at 19. But the Secretary does not cite to any part of the order dismissing Mr. Calderon's appeal. Nor does the Secretary point to another ruling by Judge Laurer in the same case. Instead, the Secretary incredibly relies on a different order issued by the "Clerk of the Court" on November 30, 2023—not Judge Laurer, who drafted the dismissal opinion. *Compare* Appx11-12 (Show Cause Order issued by Clerk of the Court) *with* Appx5 (Order dismissing appeal issued by Judge Laurer).

Regardless, even if the Secretary is correct that this demonstrates that Judge Laurer—who did not issue the Show Cause Order—understood the correct legal standard, that does not excuse the failure to *apply* that complete standard in dismissing Mr. Calderon's appeal. *See Conyers v. McDonough*, 91 F.4th 1167, 1170 (Fed. Cir. 2024) (error where "Veterans Court applied an erroneous legal standard");

16

*Pruitt v. Mote*, 503 F.3d 647, 660 (7th Cir. 2007) (error where "the district court applied the wrong—that is, an incomplete—legal standard" in reviewing motions); *Sneed v. McDonald*, 819 F.3d 1347, 1356 (Fed. Cir. 2016) (Wallach, J., concurring) ("The Veterans Court articulated an incomplete and, thus, improperly narrow legal standard for determining when an attorney-client relationship exists under California law."); *Federal Trade Comm'n v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 336 (3d Cir. 2016) ("by failing to consider this factor . . . the district court applied the incorrect legal standard. And application of an incorrect legal standard is error as a matter of law.").

Legal tests are not meant to be partially applied, particularly where a test's application can dismiss a litigant's appeal. While the Veterans Court may ultimately come to the same conclusion on remand, Mr. Calderon is entitled to a decision addressing the entire *Barrett I* legal standard. And this Court lacks jurisdiction to conduct the full analysis in the first instance. *See Conyers*, 91 F. 4th at 1172 ("we lack jurisdiction to apply the facts to the law and thus to assess whether, under the correct legal standard, the Board had constructive possession of the requested

documents."). Remand is necessary to ensure the Veterans Court applies a complete *Barrett I* analysis.[3]

### 2. The Veterans Court and the Government Legally Failed to Obtain and Provide Evidence to Mr. Calderon in Violation of *Barrett II*

The Secretary mischaracterizes *Barrett v. Nicholson*, 466 F.3d 1038 (Fed. Cir. 2006) ("*Barrett II*"). According to the Secretary, *Barrett II* simply recognized a "general practice" of requiring the government to provide relevant records, not a requirement to provide such records. Sec. Br. at 12. But the portion of *Barrett II* the Secretary quotes comes ***prior*** to the Court's holding. *Barrett II*, 466 F.3d at 1041. In *Barrett II*, the Court stated that "just as the government *must* provide the Veterans Court (and the veteran) all records in its possession relevant to the merits of a case, so too must it provide all records in its possession relevant to the contested jurisdictional issues."[4] *Barrett II*, 466 F.3d at 1043-44 (emphasis added). Thus, when a veteran alleges facts showing entitlement to equitable tolling and jurisdiction is disputed "the government *must* assist the court by providing and, where necessary,

---

[3] The Secretary's response brief does not dispute that a stamp order denying Mr. Calderon's motion for reconsideration cannot cure this error. As explained in the opening brief, without any explanation, it is unclear what the basis for the Veterans Court's stamp order denial was.

[4] The *Barrett II* rule is not predicated on section 5103A. *See Barrett*, 466 F.3d at 1045 ("[B]ecause section 5103A does not provide the basis for our holding, this argument is of no moment.").

procuring further evidence helpful in deciding jurisdiction." *Id.* at 1044 (emphasis added). And the government shall make these "submissions on its own initiative." *Id.*

> Since *Barrett II*, this Court has reiterated that where:
>
> a veteran alleges facts to show entitlement to equitable tolling . . . and jurisdiction is called into question, . . . the government *must assist the court* by providing and, where necessary, procuring further evidence helpful in deciding jurisdiction, e.g., declarations, new medical examinations, and other forms of evidence as appropriate.

*Toomer v. McDonald*, 783 F.3d 1229, 1235 (Fed. Cir. 2015) (emphasis in original) (quoting *Barrett II*). And in *Dixon v. Shinseki*, the government "acknowledge[d] that the VA is required to produce relevant records from a veteran's claims file during the initial adjudication of a request for equitable tolling." 741 F.3d 1367, 1373 n.3 (Fed. Cir. 2014). This Court's precedents make clear that *Barrett II* established a rule, not a "general practice" that the government is permitted to flout.

The Secretary also states that the VA's duty under *Barrett II* "only applies when the Veterans Court determines that it needs additional evidence." Sec. Br. at 26. Not so. As explained above, both *Barrett II* and subsequent decisions make clear that the duty is affirmative, and not dependent on a request from the Veterans Court. *Barrett II*, 466 F.3d at 1043-44 (government "must" provide records "on its own initiative"); *Toomer*, 783 F.3d at 1235; *Dixon*, 741 F.3d at 1373 n.3. Here, the government failed to comply with its *Barrett II* duty. And it was legal error for the

Veterans Court to prematurely rule on Mr. Calderon's mental illness tolling claim without obtaining these records.

The inequity of the Veterans Court's ruling is apparent. The Veterans Court dismissed Mr. Calderon's mental illness-based tolling arguments because he failed to meet the "level of showing" required. Appx4. At the same time, the government withheld the precise sorts of medical records that are needed to make the required "showing." Even though it should have been apparent to the government and the Veterans Court that such records were available, such records were not provided to Mr. Calderon and the Veterans Court failed to review such records before dismissing Mr. Calderon's appeal.

The Veterans Court instead stated that it was Mr. Calderon's "burden to produce any evidence necessary to support the argument for equitable tolling." Appx3. While generally true, the Veterans Court appears to have placed the burden on Mr. Calderon to obtain and produce medical records within the possession of VA, inconsistent with *Barrett II*. *Id.* The Secretary also does not dispute that the Board's opinion—which was in the record before the Veterans Court—plainly cites VA medical records relating to Mr. Calderon's PTSD and claims of memory loss. *See* Appx19 (referencing various "VA treatment records"); Appx21 (referencing "June 2014 VA examination," "May 2020 medical opinion," and "December 2020 medical opinion"); Appx22 ("June 2014 PTSD DBQ"). Nor does the Secretary dispute that

20

the VA failed to provide those records to Mr. Calderon. And Mr. Calderon provided a letter from his psychiatrist indicating that he was being treated for his PTSD at the VA. Appx32. To rule that Mr. Calderon's mental illness arguments were insufficiently supported, while also failing to review or obtain VA medical records regarding the very same mental illness, is unjust and inconsistent with *Barrett II*.

### 3. The Court Should Address the Merits of the *Barrett II* Issue on Appeal

The Secretary finally argues that Mr. Calderon's *Barrett II* argument was "forfeited" because he did not raise it with the Veterans Court. Sec. Br. at 23. The Secretary also faults Mr. Calderon for not "request[ing]" his VA medical records in his submission to the Veterans Court. *Id.* at 26.

The Court should address the merits of Mr. Calderon's *Barrett II* argument. This Court has the discretion to consider issues not raised below "as justice may require." *Hormel v. Helvering*, 312 U.S. 552, 555-59 (1941); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); *Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 80 F.4th 1363, 1374 (Fed. Cir. 2023) ("whether to excuse a forfeiture is generally within our discretion.").

In considering whether to exercise this Court's discretion to hear issues not raised below, this Court has recognized several reasons for considering issues raised

for the first time on appeal: (i) whether it involves a pure question of law; (ii) the proper resolution is beyond any doubt; (iii) whether the appellant had an opportunity to raise the objection; (iv) whether the issue presents significant questions of general impact; or (v) the interest of substantial justice is at stake. *See Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376, 1379 (Fed. Cir. 2015). These factors weigh in favor of this Court reviewing the *Barrett II* argument.

*A Question of Law*. It is an undisputed fact that the VA has in its possession additional medical records relating to Mr. Calderon's PTSD and memory loss. It is also undisputed that the VA did not provide those records to Mr. Calderon or the Veterans Court in reviewing the equitable tolling issue below. Therefore, the only issue remaining is whether the undisputed failure to provide such records or for the Veterans Court to consider them is a violation of *Barrett II*. This is an important question of law.

*Significant Issues of General Impact and the Interests of Justice*. The Court should consider the broader ramifications of declining to address this issue. Part of *Barrett II*'s rationale is the injustice in permitting the government to withhold medical records that are relevant to establishing access to judicial review. *See Barrett II*, 466 F.3d at 1043 ("it would be inconsistent to allow the government to withhold records relevant to jurisdiction, thereby restricting his very access to judicial review, while not so allowing with respect to records relevant to the merits

of the case."). *Barrett II* therefore placed an *affirmative* duty on the government to come forward with such records "on its own initiative." *Id.* at 1044. If the VA could, notwithstanding *Barrett II*, withhold such records from unsuspecting *pro se* veterans and then argue forfeiture on appeal because the veteran did not explicitly request such records below, the VA will be incentivized to evade its duty in many cases where the VA has possession of records relevant to tolling. Thus, the Court should weigh the merits of Mr. Calderon's *Barrett II* argument.

**Opportunity to Raise the Objection**. Veterans like Mr. Calderon are often *pro se* before the Veterans Court. Such veterans are at an informational disadvantage against the government. They are frequently unaware of the procedures of the Veterans Court or the intricacies of the law. It would be unreasonable to expect them to be aware of the specific holding of *Barrett II*. Here, the Veterans Court's Order to Show Cause (Appx11-12) informed Mr. Calderon that it was his "burden to produce *any* evidence necessary to support" his equitable tolling argument. The order said nothing about the government's duty to produce records to Mr. Calderon which could be relevant to the equitable tolling analysis. *Id.* How then was Mr. Calderon, acting *pro se* before the Veterans Court, expected to raise this issue? After Mr. Calderon's submission, it should have been apparent to the VA and the Veterans Court that the additional medical records in the VA's possession were relevant to the tolling dispute. Yet, between December 20, 2023, when Mr. Calderon filed his

response with the Veterans Court, and February 2, 2024, when the Veterans Court issued its dismissal decision, the VA failed to do so. Appx29; Appx5.

Eventually, Mr. Calderon obtained counsel and filed a motion for reconsideration. Appx6-8. The Secretary notes that Mr. Calderon's counsel did not include this argument in his motion for reconsideration. Sec. Br. at 26. But motions for reconsideration at the Veterans Court are typically limited to "points of law or fact that the party believes the Court has overlooked or misunderstood." U.S. Vet. App. R. 35(e). And the Veterans Court itself has held that such a motion "is not the place to advance a new argument before the [Veterans Court]." *Williams v. Peake*, No. 05-3347, 2008 WL 2132306, at *1 (Vet. App. May 20, 2008). Mr. Calderon's counsel below consequently limited their arguments to the issues raised in Mr. Calderon's filing with the court.

## CONCLUSION

For the foregoing reasons, Mr. Calderon respectfully requests a remand for reconsideration of whether the circumstances established in the record warrant equitable tolling under the appropriate legal standards and with consideration of the full record regarding Mr. Calderon's mental illnesses.

Date: January 16, 2025

Respectfully submitted,

/s/ *Katherine A. Helm*

Katherine A. Helm
DECHERT LLP
Three Bryant Park
1095 Avenue of the Americas
New York, New York 10036-6797
(212) 698-3500

Shyam Shanker
DECHERT LLP
300 South Tryon Street, Suite 800
Charlotte, NC 28202
(704) 339-3160

*Counsel for Joseph L. Calderon*

## CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Federal Circuit Rule 32(b)(1).  This brief contains 5,693 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Date: January 16, 2025          /s/ *Katherine A. Helm*
                                 Katherine A. Helm